ELK FORK OIL & GAS CO. et al. v. FOSTER et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 308.

1. RECEIVERS—APPOINTMENT ON COURT'S OWN MOTION.

A bill was brought for an injunction to prevent defendants from taking possession of certain land. A defendant filed a bill against complainants, praying an injunction, and obtained the usual restraining order. The court, on argument of the two cases, consolidated them, treating the bill of defendant as a cross bill, and, of his own motion, appointed a receiver of the property in dispute. No order was passed dissolving either of the injunctions. Afterwards other defendants filed a cross bill, and another receiver of different property was appointed by the court of its own motion. The suits all related to rights claimed by the several parties in oil and gas rights under certain leases held by them. All parties concurred in the necessity of operating the property, and each side desired permission so to do. *Held*, that the appointment of receivers on the court's own motion was proper.

2. SAME—PAYMENT OF EXPENSES.

The cost of a receivership, where the receiver was appointed by the court of its own motion, will be charged against the fund in the hands of the receiver, rather than against one of the parties, in the absence of fraud or improper conduct of any of the parties.

3. SAME—REPAYMENT OF ADVANCES BY PARTY.

    It is proper to order a return to a party of advances made by him to the receiver appointed in the suit, pending the receivership, where such advances were made under the permission of the court, and in reliance on its order requiring a repayment if the income accruing to the receiver was sufficient therefor.

4. SAME—ALLOWANCE FOR COUNSEL FOR RECEIVER.

    An allowance may be made to the counsel for a receiver.

   Appeal from the Circuit Court of the United States for the District of West Virginia.

   W. P. Hubbard, for appellants.

   A. Leo Weil and Alfred Caldwell, for appellees.

   Before SIMONTON, Circuit Judge, and PAUL and BRAWLEY, District Judges.

   SIMONTON, Circuit Judge. This case comes up on appeal from the circuit court of the United States for the district of West Virginia. The Elk Fork Oil & Gas Company and others filed a bill in equity on 19th March, 1897, in the circuit court of Tyler county, W. Va., against E. H. Jennings and others, praying an injunction against them in taking possession of about 1,000 acres of land in Tyler county. The suit was removed into the circuit court of the United States for the district of West Virginia. On the 2d of April of the same year the Elk Fork Oil & Gas Company filed an amended bill against the same parties, and also against George E. Foster, praying similar relief; and on 14th April, 1897, the same complainant filed another amended and a supplemental bill against the same defendants. On the 6th of April, 1897, before he was served with process under the amended bill of the 2d April, Foster filed his bill against the Elk Fork Oil & Gas Company and the other parties who were complainants to the suit first named, praying an injunction, and obtained from the court the usual restraining order. The two causes came before the circuit court, and were argued by counsel. There was in neither of them the prayer for the appointment of a receiver. The court, hearing the argument, consolidated the two suits,—treating the bill of Foster as a cross bill,—passed no order dissolving either of the injunctions, but appointed Charles W. Brockunier receiver of the property in dispute. On 17th April, 1897, Jennings, Guffey, and Glatzau, who were defendants to the bill of the Elk Fork Company, filed their answer, and at the same time, on leave, filed a cross bill against the complainants in the amended bill, and also their bill, called a "cross bill," against Clell Nichols and others. The case was consolidated with the other cases, and thereupon the court appointed W. A. McCosh receiver, so far as the oil and gas rights were concerned, in what was known as the "Wood Lease." By subsequent orders the receivership of Brockunier was extended so as to cover five other tracts; all, however, occupying the same relation as the other tracts over which he had been appointed receiver. These suits all related to rights claimed by the several parties in oil and gas rights under certain leases held by them. The contest was as to the validity of these leases. The re-

ceivers having been appointed, they were directed by the court to conduct the exploration of the lands for oil and gas, and, when oil wells were found, to operate them. Leave was given to any of the parties to advance funds and material necessary for this purpose. Foster and the Elk Fork Oil Company both took advantage of this permission. The result of the suits was in favor of the Elk Fork Oil & Gas Company (84 Fed. 840), and the decree of the circuit court was affirmed in this court. 32 C. C. A. 560, 90 Fed. 178. The mandate having gone down from this court, certain proceedings were had in the court below for the purpose of ascertaining facts necessary for the final determination of the case. These facts relate to the conduct and compensation of the receivers, the person or fund from which this compensation should be paid, and to the right of Foster to be repaid certain advances which he made in money and material. The circuit court, hearing these questions, awarded the receivers, as compensation, as follows: Receiver McCosh, $200 per month from April 17, 1897, to February 23, 1898, and fees for his counsel, $250; Receiver Brockunier, $300 per month from April 23, 1897, to February 23, 1898, and to his counsel $500, besides $20 traveling expenses; these sums to be paid out of the funds in their hands, respectively. It directed that the sum of $28,119.56, advanced by Foster in money and materials, be repaid to him out of the funds of the receivership. To this decree exceptions were taken, an appeal was allowed, and the cause is here on the assignments of error.

It is contended that the court below erred in appointing the receivers, as this was done by the court suo motu, without application on this behalf by either party. For this reason it is sought to put the expenses of the receivership upon Foster, because he readily acquiesced in this appointment, and availed himself of it. If the court erred in appointing the receiver under the circumstances stated, it is difficult to see why Foster should bear the consequences. It is admitted that he did not ask for a receiver; that he had no hand in his appointment; that it was made solely at the will and instance of the court. Why, then, hold him responsible? But the court did not err in appointing the receiver. The bills and cross bills showed conflicting claims to the gas and oil rights in controversy, and presented questions most difficult of solution,—questions of novel aspect. It was impossible at that stage of the case to determine to which side justice inclined. The solution of this question required, not only an examination of questions of law, but also the ascertainment of facts. All the parties were under injunction, and, without the action of the court pending the consideration of the controversy, there was danger of irreparable mischief to the interests of that party to whom the results of the case might award the property. Under these circumstances, using the lights then before him, the learned and experienced judge of the district court determined to put the property in the custody of the court, and to place it in the hands of discreet and disinterested third parties. The wisdom of his course has been demonstrated in the development of the causes, and he has met the unqualified approval of the circuit judge, who heard the case after him. The only question is as to the

power of the court, under the circumstances of this case, to appoint a receiver; there being no prayer to that effect in either bill, and no notice of a motion to this end. The situation was this: The causes were heard on the motions for injunction. Counsel for the parties were all in the presence of the court. Each side asked for injunction against the other. All concurred in the necessity of operating the property. Each asked that he should be allowed to operate it, and, of course, to be protected in doing this. The title was in dispute. The court had concluded to continue the injunctions. As it was deemed necessary that the property must be operated, the only question was who should operate it. Each side craved permission to do so. The court would not consent to give either party this authority, and preferred to select its own agent,—to name its own receiver. The appointment of a receiver was the necessary corollary to the case presented. "Working of mines is something more than the common and ordinary use of real estate, and requires the use of more than ordinary remedies to protect the rights of a party entitled to the possession. The granting of an injunction, and, if necessary, the appointment of a receiver, are common remedies." 15 Am. & Eng. Enc. Law. p. 605. The power of appointing a receiver, when the relief is necessary for the preservation of the property pending an injunction suit, is a necessary incident to the power of granting an injunction. High, Rec. p. 17. So, also, in his eighty-third section of his book on Receivers, Mr. High says, "It is not, however, indispensable that the bill contain a specific prayer for a receiver, if the facts stated are sufficient to justify the appointment, since the necessity for the relief frequently occurs after the filing of the bill;" and at section 98, "It would seem that a receiver may be appointed, in a case otherwise proper for relief, if the facts show the necessity for the relief, and the proper parties are before the court, although the application was made for an injunction, and did not specify the appointment of a receiver." In Daniell, Ch. Pl. & Prac. (Perkins' Ed.) p. 1426, we find it stated thus, "It appears in general that, if the facts of the case authorize it, the court may appoint a receiver, although there is no prayer to that effect;" and at page 1427, "A receiver has also been appointed at the hearing, although there was no prayer to that effect in the bill,"—quoting Osborne v. Harvey, 1 Younge & C. 116. Thompson, in his book on Corporations (volume 5, § 6880), lays down the doctrine that it is not indispensably necessary, in all cases, to the validity of the appointment of a receiver, that notice of the application be given to any one. In the present case, not only was notice unnecessary, but it was impossible. The cause came up on motions for injunction. Hearing it, the court became satisfied of two things: That the operations on the property should go on; that no party to the suit should be intrusted with it. As the result of its conclusion on these two points, the court, exercising its discretion, appointed its own receiver, and such an appointment was in its discretion. Sage v. Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694. Reaching that conclusion from the argument before it, it would have been an idle ceremony for the court to direct that notice be given of a mo-

tion to appoint a receiver. Who could give such notice? Neither party desired a receiver. The necessity for a receiver was in the judgment of the court. We concur with it, and see no error in the course it pursued.

The next question is, from what source shall the expenses of the receivership be paid? The appointment of the receivers, as has been seen, was the act of the court. It was not obtained by the fraudulent or improper act of any of the parties to the causes. There was no misrepresentation by any one. The fund in court was the result of the court's action, and that alone. The law on this point is well stated in the case of Ferguson v. Dent, 46 Fed. 88,—a case (decided by Judges Jackson and Hammond) of high persuasive authority:

"When it becomes the duty of a court of equity to take property under its own charge through a receiver, the property becomes chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services. Such is unquestionably the well-settled law, and a citation of authorities in support of it would seem to be needless. No case to the contrary has been cited by counsel, nor any in support of their position, except those heretofore noticed; and it is believed that not one decision can be found holding that the proper expenses of a receiver, or his compensation, shall be taxed as costs against the losing party, where his appointment was proper and legal, and made by a court in the exercise of its undoubted jurisdiction, and where the fund in his hands is sufficient to pay the same. Nor does the legality or propriety of his appointment depend at all upon the event of the suit. Because it is ultimately determined that the plaintiff in action is not entitled to recover or to the relief he seeks, non constat that the action of the court or the conduct of the parties in the appointment of the receiver has been irregular, improper, erroneous, or unnecessary."

Couper v. Shirley, 21 C. C. A. 288, 75 Fed. 168, 44 U. S. App. 586, does not apply to this case. In Couper v. Shirley the appointment of the receiver was not made by virtue of any of the established general principles of equity, which, when alleged to exist, would authorize a court of equity to appoint a receiver, but was made solely in pursuance of a stipulation contained in the mortgage. And by the laws of Oregon, in which state the case was heard, no receiver can be appointed over mortgaged premises pending proceedings for foreclosure. So the appointment was against public policy and absolutely void. For this reason the expenses of the receivership were cast on the plaintiff.

The next question is as to the advances made by Foster to the receiver pending the receivership. In an order of April 13, 1897, among other things, was this provision:

"But the said receiver shall not be required or expected to drill any well upon the said premises unless one or more of the parties shall advance funds to an amount sufficient, in his judgment, to pay for the expenses of drilling one well. If the said Elk Fork Oil & Gas Company and the said Foster shall each offer to provide such funds, the receiver shall accept an equal amount from each. If only one of said parties shall offer funds for that purpose, the receiver shall accept them, and in the event that the production from the well drilled by the expenditure of such funds, or the production of any other wells during his receivership, shall be sufficient for the purpose, shall refund to such party the amount received from it or him, with interest. Such repayment shall in like manner be made if the funds shall be contributed by both parties; but, if the production from such territory be insufficient to repay the funds so advanced, the deficit shall be borne and lost by the party advancing the funds, or, if both have advanced funds, by them in proportion to such advancements."

Advances under this order were made by the Elk Fork Oil & Gas Company and by Mr. Foster. The circuit court ordered the return to Mr. Foster for all the advances made by him. This is assigned as error. These advances were made under the order of the circuit court, and in reliance thereon. Good faith demands that the promise of the court be fulfilled. The advances must be returned to Mr. Foster. We see no error in this action of the court.

The court made allowances to the receivers and their counsel. This is in accordance with the practice of a court of equity. On this point the chief justice lays down the rule in Stuart v. Boulware, 133 U. S. 81, 10 Sup. Ct. 243, 33 L. Ed. 570:

"The receiver is an officer of the court, and subject to its directions and orders; and while, in the discharge of his official duties, he is at all times entitled to apply to the court for instruction and advice, he is also permitted to obtain counsel for himself, and counsel fees are considered as within the just allowances that may be made by the court. The order of October 26, 1885, recognizes the employment by the receiver of counsel in this litigation, although no specific original order giving that authority is found in the record. So far as the allowances to counsel are concerned, it is a mere question as to their reasonableness. Nor is there any doubt of the power of courts of equity to fix the compensation of their own receivers. That power results necessarily from the relation which the receiver sustains to the court, and, in the absence of any legislation regulating the receiver's salary or compensation, the matter is left entirely to the determination of the court from which he derives his appointment. The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management. Like all questions of costs in courts of equity, allowances of this kind are largely discretionary; and the action of the court below is treated as presumptively correct, 'since it has far better means of knowing what is just and reasonable than an appellate court can have,' as was remarked by Mr. Justice Bradley in Trustees v. Greenough, 105 U. S. 527, 537, where the subject is considered."

The court below had full knowledge of the degree of responsibility and business ability required of the receivers, and of the manner in which they discharged their duties. We see nothing extravagant in the allowances, and no error in allowing them. The decree of the circuit court is affirmed.