ANDREW C. GRAY, ATTORNEY GENERAL, at and by the relation of Joseph Wilkins Cooch, Alfred A. Curtis and George C. Kerr,

*vs.*

THE COUNCIL OF NEWARK and the NEWARK WATER AND ELECTRIC COMPANY.

*New Castle, April 7, 1911.*

To entitle one to a mandatory preliminary injunction, he must clearly show a prospective irreparable injury, for which he will have no adequate remedy at law.

A preliminary injunction is designed merely to preserve the subject of the controversy, and cannot be used to take property from the possession of one party and put it in that of another; and hence, in a suit to avoid a lease of public utilities by a municipality to its co-defendant, the lessee will not be compelled by preliminary injunction to return the property to the municipality, though the transfer occurred shortly before a restraining order was served, where no threatened or prospective injury to the property is shown.

The Chancellor can appoint a receiver on his own motion, if justified by the facts and circumstances.

The appointment of a receiver, where the relief is necessary for the preservation of the property pending an injunction suit, is a necessary incident to the power of granting an injunction.

The mere fact that a corporation is newly created does not warrant an inference of its insolvency, on a question of the propriety of appointing a receiver.

A receiver *pendente lite* should not be appointed merely because it tends to hasten final determination of the suit, nor because it will make it unnecessary to appoint a master to settle accounts, in case of a determination in favor of complainant.

A receiver *pendente lite* should be appointed only when necessary to prevent manifest wrong and injury, and when plaintiff would otherwise be in danger of suffering irreparable loss.

A receiver *pendente lite* is appointed to prevent injury to the thing in controversy, and to preserve it for the security of all parties in interest, to be disposed of as the Court may finally direct.

To warrant the appointment of a receiver, it must appear that possession of the property was obtained by the defendant through fraud, or that the property itself or the income from it is in danger of loss, through neglect, misconduct, or insolvency of the defendant; and, as against a defendant in possession and enjoyment of the property which is the subject of litigation, equity proceeds cautiously in appointing a receiver.

INJUNCTION BILL. The relators were residents and tax-payers of the town of Newark, and filed this bill for the purpose of restraining The Council of Newark from leasing to the Newark Water and Electric Company the light and water plants belonging to said town. Upon presentation of the bill, under

*Section* 16, *Chapter* 95, of the *Revised Code of Delaware*, the Chancellor certified to the Chief Justice his disqualification to hear and determine the cause, who made an order for a rule requiring the defendants to show cause why a preliminary injunction should not be issued restraining the execution of the lease by The Council of Newark. The cause was heard on bill and *ex parte* affidavits, the material averments of which are stated in the opinion.

*Herbert H. Ward, Levin Irving Handy* and *Edward W. Cooch*, for the complainants.

*Robert H. Richards* and *Daniel O. Hastings*, for the Council of Newark.

*Charles F. Curley*, for the Newark Water and Electric Company.

THE CHIEF JUSTICE: In the above stated cause the bill of complaint was filed on the eleventh day of February, 1911, by the Attorney General, upon the relation of certain citizens and taxpayers of the town of Newark, in which it is averred that on the eighth day of February last, in pursuance of a motion, a lease of the light and water plants of said town was executed, or was about to be executed, by and between the Council of Newark and the Newark Water and Electric Company, and that the Council of Newark is about to deliver said light and water plants to the said Newark Water and Electric Company, in accordance with said lease.

It is further averred:

"That the action of said council, in adopting said motion, was wholly without warrant or authority, and was in gross violation of the rights of the inhabitants and taxables of said town. That the leasing of said light and water plants would be a violation of the provisions of the charter of the Council of Newark, and the supplements and amendments to the same. That at the time of the passage of said motion by the Council of Newark, the Newark Water and Electric Company was not incorporated, the charter of said company not having been filed with the Secretary of State until the following day, to wit, February 9, 1911."

Upon said bill the complainants prayed, as follows:

"That the defendants, the Council of Newark and Newark Water and Electric Company, their and each of their officers, attorneys, solicitors, agents and servants, may be prepetually restrained by injunction of this Court from further proceeding in the premises, and that the defendant, the Council of Newark, be further restrained by injunction from executing and delivering a lease for the said light and water plants to the said Newark Water and Electric Company, in accordance therewith, and that the said defendant the Newark Water and Electric Company be perpetually restrained by injunction as aforesaid, form running, operating or maintaining said light and water plants, or either of them, by reason of said lease or otherwise, and that all contracts or agreements by and between the said the Council of Newark and the said Newark Water and Electric Company, with regard to leasing said light and water plants be decreed to be illegal and void; and also that a preliminary injunction may issue restraining said defendants, their officers, attorneys, solicitors, agents and servants, in like manner, until the further order of the Chancellor.

"That the complainants may have such further and other relief as the nature of the case may require."

Upon the filing of said bill of complaint, to wit, on the eleventh day of February, 1911, a rule was issued by the Chief Justice of the State, acting in the place of the Chancellor, requiring the said defendants to appear on Saturday, the eighteenth day of February, 1911, and show cause "if any you have or know why a preliminary injunction should not be granted according to the prayer of the said bill; and it is further ordered by the Chief Justice, that you, the said the Council of Newark, your officers and agents, be and you and they and each of you and them, are hereby restrained from executing and delivering to the said Newark Water and Electric Company a lease for the said light and water plants, and from the delivery of said light and water plants to the said Newark Water and Electric Company in accordance therewith, until the further order of the Chief Justice."

All the questions raised by the bill of complaint have been fully argued, but an objection has been made to the issuance of the preliminary injunction prayed for, which must be disposed of before any other questions can be determined. It is insisted by the defendants that a preliminary injunction, such as is ordinarily issued, would be wholly useless and ineffective in this case, because the acts or things sought to be restrained had been effected and accomplished before the rule and restraining

order were served upon the defendants. It clearly appears from the affidavits filed by the defendants, and is not denied by the complainants, that the lease in controversy was executed on the ninth day of February, 1911; that the light and water plants mentioned therein were turned over to the Newark Water and Electric Company, one of the defendants, at 12 o'clock noon on the eleventh day of February, 1911, and that the rule and restraining order issued in the cause were not served upon either of the defendants until about 5 o'clock p. m. of the same day.

Such being the case, the first question to be considered is whether the Court can, at this stage of the case, issue an injunction compelling the Newark Water and Electric Company, one of the defendants, to deliver to the Council of Newark, the other defendant, the said light and water plants. Such an injunction, if granted, would be a mandatory injunction, which is distinguishable from the preliminary injunction usually granted. Such an injunction is not specifically prayed for, but the complainants claim that it can and should be granted under their prayer for further and general relief. Can the Court in this case issue a mandatory preliminary injunction under the well settled principles and rules of equity procedure and practice?

In *Murdock's Case*, 2 *Bland* 439, 448, Bland, Chancellor, said:

"The plaintiff prays for an injunction of a more extensive operation than can now be granted. He asks not merely, that things may be preserved in their present condition, but that some things which have been done may be undone; in other words, he asks the Court now, and at once, to put forth in his behalf its remedial as well as its conservative powers. But before imputed wrong can be removed, or anything like commutative justice can be administered, it is the duty of the Court to give the party complained of an opportunity of being heard. * * *

"The only object of the conservative power of the Court, as expressed in an injunction of this kind, is, not to determine any controverted right, but merely to prevent a threatened wrong, or any further perpetration of injury, or the doing of any act thereafter whereby the right to a thing may be embarrassed, or endangered, or whereby its value may be materially lessened, or the thing itself may be totally lost. The principal object of an injunction, in cases of this kind, is to prevent irreparable injury by preserving things in their present state; but if the injunction were to order anything to be pulled down or undone, it is obvious, that it might

be, itself used as a means of producing that very kind of irreparable injury to the defendant which the bill charged him with being about to perpetrate against the plaintiff."

In the case of *Bosley v. Susquehanna Canal*, 3 *Bland* 49, the Chancellor used the following language:

"I have met with no instance, in the English books, and but one case among the records of this Court, in which a defendant has been apparently ordered, by an injunction of this kind, to do, or to undo anything. The Court of Chancery by this writ merely prohibits certain acts, or any further acts from being done."

To the same effect are, so far as I have found, all the authorities recognized as authoritative upon the subject. They hold the doctrine to be well settled that the Court cannot by interlocutory order, or injunction in advance of a full hearing, undo something that has been done, divest property rights, actual or apparent, or transfer the possession of property from one person to another. But while a preliminary injunction cannot be issued for any such purpose, the authorities agree that in some exceptional cases it has been so framed as, apparently, to approach to the verge of ordering a thing to be undone. A case of this kind was where the regular flowing of a stream of water had been so interrupted by the making of occasional breaches or obstructions as to be very injurious to the use of it for certain purposes, and an injunction issued to restrain the continued interruption involved the removal of the obstructions. Other cases might be mentioned, such as where the maintenance of erections placed and maintained by the defendant to effect the injury complained of was forbidden, on the ground that the defendant effected the act he was restrained from doing by continuing such erection. Of such general character were the two unreported cases cited from the records of this State, viz.: *Hossinger v. Thomas & Davis Co.* and *Fitzpatrick v. Beggs*. In the first case the defendant was restrained from using a drain pipe or sewer leading from his factory to "Boogie Run" for the purpose of discharging therefrom into said stream as it flowed across the land of the complainant, inks, dyes, chemicals, etc., resulting from the manufacture or printing of wall paper. In the other case the defendant was restrained from interrupting and inter-

fering with the right of way and easement of the complainants. These two cases fall strictly within the exceptions to the general rule, in which from their peculiar nature the existing and natural state of things could not otherwise have been preserved. The injunction in such cases does not command anything to be *undone*, but merely that an injurious irregularity should not be any longer *continued*, considering the continuance of the act as a repetition of it.

But while there may be exceptions, of the character indicated, to the general rule which forbids the issuance of a mandatory preliminary injunction, the courts and textwriters agree that under any circumstances a very strong and urgent case is required to justify such an injunction. A clear case of prospective injury for which the plaintiff will have no adequate remedy at law is indispensable. The granting of a mandatory injunction pending the trial, and before the rights of the parties in the subject matter which the injunction is designed to effect have been definitely ascertained by the Chancellor, is not permitted except in extreme cases where the right thereto is clearly established, and it appears that ireparable injury will flow from its refusal. *Gardner v. Stroever*, 81 *Cal.* 148, 22 *Pac.* 483, 6 *L. R. A.* 90; *Hagen v. Beth*, 118 *Cal.* 330, 50 *Pac.* 425; *High on Injunctions* (2d Ed.) § 601; *Beach on Injunctions*, § 112, and cases there cited.

The sole cbject of a preliminary injunction is to preserve the subject of the controversy in the condition in which it is when the order is made. It cannot be used to take property out of the possession of one party and put it in the possession of the other. That can be accomplished only by a final decree. *Farmers' R. Co. v. Reno, O. C. & P. R. R. Co.*, 53 *Pa. St.* 224. In the case of *Minneapolis & St. L. Ry. v. Chicago, M. & St. P. Ry.*, 116 *Iowa* 681, 88 *N. W.* 1082, the Court said:

"As the defendant's grade and track were established and laid when the action was commenced, and as the defendant was in the actual possession of the property, the injunction was mandatory in character, and had the effect of transferring the possession of the property from defendant to the plaintiff. That this is not the office of a temporary writ is well established, and it follows that the injunction was improvidently granted, and should

have been dissolved. The authorities seem to be almost unanimous on this proposition."

After a careful examination of the authorities, I am clearly of the opinion that the case before me comes under the general rule, that a preliminary injunction will not be granted to take property out of the possession of one party and transfer it to the possession of another. I am equally clear, that from the facts and circumstances disclosed by the proofs, the case does not fall within any of the recognized exceptions to said rule. There is no proof or averment of threatened or prospective injury to the plants, or of any act whereby the right to the property would be endangered, its value materially lessened or the plants themselves lost. There is no claim that irreparable injury would result if a mandatory injunction is not granted. All the averments amount practically to a charge that the alleged lease or contract under which possession of the plants was obtained is illegal and void, and that question cannot be determined until after a full hearing. The fact that the property was transferred to the defendant only a few hours before the service of the restraining order, cannot prevent the application of the rule, because however brief the intervening time, it is shown, and not disputed, that the alleged lease was executed and the properties in question fully delivered into the possession of the Newark Water and Electric Company before the rule to show cause and restraining order were issued and served, and before the action was begun.

The question under consideration has been passed upon in this State in a case not referred to by counsel on either side, and not yet reported in our own reports. The conclusion I had reached is in entire accord with that held by the Court in the case referred to, which is reported in 74 *Atl.* 841, being *Tebo, et al., v. Hazel, et al.* In that case the complainants at the hearing of the rule asked for a preliminary injunction, mandatory in effect, that would compel the defendants, the trustees and their successors in office as members of the board of trustees, to open the church and parsonage, which were in their possession, to the minister duly authorized and appointed under the discipline and rules of the Methodist Episcopal Church. In said case

Chancellor Nicholson delivered a very elaborate opinion, in which the authorities were fully reviewed. He said:

"There is, of course, no doubt of the power of the Court of Chancery to grant in a final decree all the relief prayed for by the bill, or asked for by counsel, and a great number of cases have been cited in the briefs in which courts of equity have decided somewhat similar cases after final hearing of the suit, and have settled by final decree the question of the possession, or right of control over church property, in cases where trustees or members of a local church or religious society have claimed the right to possession or control against other members or trustees or a pastor representing, or claiming to represent, the authority of the general religious denomination or organization whose name was borne by the local religious society. The question, however, whether the Chancellor of Delaware has the power to grant a preliminary injunction, mandatory in character, and in this summary fashion on motion to alter the position of the parties to a suit in respect to its subject-matter, requires most careful consideration, and is one of supreme importance to the citizens of this State, a question no less important than are those which go to the merits of this suit."

The Chancellor held that, although in a few extreme cases certain English Chancellors have granted preliminary or interlocutory injunctions mandatory in effect, and cases may be found in courts of equity in other states holding that a preliminary injunction may be ordered in cases of extreme necessity, where the situation indicated an absolute necessity for its use in the preservation of the rights of the parties, such an injunction could not be granted in this State where the possession of property is concerned. Accordingly the motion for a preliminary injunction was denied, and the rule discharged. It is manifest that this Court cannot issue an injunction to restrain the execution of the lease, or the delivery of the property, because, the acts having been performed, such an order would be entirely futile.

But the complainants also pray that the Newark Water and Electric Company be restrained from operating or maintaining the plants. Even though the Court had the power to make such a preliminary order in the present case, it obviously should not be done, and is not desired by the complainants, if it would result in the plants not being operated at all. They cannot

be operated by the Council of Newark, because possession of the property cannot be changed. It is for the advantage of all parties that the operation of the plants shall be continued, and it must be done by the Newark Water and Electric Company, unless a receiver may be appointed by the Court, upon its own motion, to operate the plants during the pendency of the suit. Under the prayer for further and general relief the full extent of a preliminary injunction would be to restrain the defendants from parting with the possession of the plants, from changing their present condition and from injuring, or making any abusive use of the same, pending a full adjudication of the case, or until the further order of the Court.

It is strongly urged in behalf of the complainants that if an injunction cannot be issued at this stage of the case, mandatory in form, the facts and conditions are nevertheless of such character as to justify the Court in appointing a receiver to operate the plants, and preserve the same in their present condition, until there has been a full hearing, and final disposition of the case. The appointment of a receiver is not formally asked for by the complainants, but I have no doubt of the power of the Chancellor, upon his own motion, and in the absence of such prayer, to appoint a receiver, provided the facts and circumstances are such as to justify him in so doing. The existence of such power was clearly recognized by Circuit Judge Simonton in the case of *Elk Fork Oil & Gas Co. v. Foster*, 99 *Fed.* 495, and fully recognized also in the authorities cited by the learned judge in the course of his opinion. The rule upon the subject is clearly and briefly expressed in *Daniel's Chancery Pleading and Practice*, 1426, thus:

"It appears in general that if the facts of the case authorize it, the Court may appoint a receiver, although there is no prayer to that effect."

The appointment of a receiver where the relief is necessary for the preservation of the property pending an injunction suit, is a necessary incident to the power of granting an injunction. *High on Receivers*. 17.

Would the Court be justified, under the facts in this case, in appointing a receiver? In order to decide this

question it is necessary to carefully consider the pertinent facts as shown by the bill of complaint and affidavits filed in the case. The facts and circumstances connected with the execution of the lease, as well as the acts of the Council prior and subsequent thereto, are not material to the question now under consideration. But any facts are material which show, or tend to show, that there is danger that the subject matter of the controversy may be wasted, destroyed, impaired, injured, or removed during the progress of the suit, if allowed to remain in the possession of the defendant company. What are the material facts in the case? The property in question consists of the waterworks and the electric light plant of the town of Newark. The property is in the possession of the Newark Water and Electric Company under and by virtue of an alleged lease made by and between the Council of Newark and said company. The waterworks are being operated by the Newark Water and Electric Company, and certain extensions or additions have been made thereto since the execution of the lease and delivery of the property. Under the terms of the lease the lessee is required to give bond with satisfactory surety, in the sum of $10,000, conditioned for the faithful performance of its covenants and undertakings. The bond was given and accepted. The Newark Water and Electric Company is required under the lease to keep the properties insured. The company is a new corporation, having been formed, practically by one Jacobs, about the time the lease was executed, for the purpose of leasing the water and light properties. Jacobs resigned from the Council for the purpose of organizing said company, after the water and light rates had been raised by the action of Council, and he is now the president of the defendant company. From these facts it is urged by the complainants that a receiver should be appointed for the following reasons, viz.: (1) Because the lessee, the Newark Water and Electric Company, is irresponsible. (2) Because the interests of the citizens and taxpayers are not protected by suitable or adequate bond. (3) Because the moneys belonging to the several parties will become hopelessly commingled. (4) Because a receivership will tend towards hastening the final determination of the

controversy. (5) Because a receivership will make unnecessary the appointment of a master to settle accounts, in the event of its being finally determined that the lease must be canceled and the property returned to the Council.

It may be said with respect to the first ground, that there is no proof before the Court which shows that said company is insolvent. It does appear from the affidavits that it is a new company, and had no existence until at or about the time the lease was executed. But the Court cannot infer insolvency from that fact alone. So that, if the insolvency of the lessee would constitute a good and sufficient ground for the appointment of a receiver, such a condition is not established by the proofs in the case. Neither is it shown that the citizens and taxpayers are likely to suffer because their interests "are not protected by suitable or adequate bond." It does not appear in what respect the bond is not suitable or adequate. The sufficiency of the surety is not questioned, and the amount of the bond is objected to because it *may not* be adequate to protect the town from any injury and loss that *may result* from the possession and operation of the properties by the Newark Water and Electric Company. The greatest danger, of course, consists in the total or partial loss of the properties by fire. But in addition to the requirement in the lease that the lessee should keep the insurance in force, it may be said that the town is still the owner of the waterworks and light plant, and it is still the duty of the Council to see that proper insurance is maintained thereon. So that, if the Council does its duty in this regard the town will be protected against loss by fire, so far as insurance will furnish such protection. The bond was given to secure the faithful performance by the obligee of its covenants and undertakings, and I am unable to see that the complainants are in danger of suffering irreparable loss because the bond is not greater in amount. It seems to be sufficient in amount to reasonably insure the performance by the lessee of its undertakings and to protect the town in case of its default.

I do not think a receiver *pendente lite* has ever been appointed solely because it would "tend towards hastening the final determination of the controversy," or because a receiver-

ship would "make unnecessary the appointment of a master to settle accounts," in the event of a determination of the case in favor of the complainants.

It is further insisted that a receiver should be appointed because the moneys belonging to the several parties will become hopelessly commingled. It is possible that it might be difficult to ascertain at the end of the litigation what moneys had been received in the operation of the properties, and what proportion thereof would belong to the town, if the case should be finally decided in the complainants' favor. But are there any facts from which the Court can reasonably conclude that such would probably be the case? Is there actual danger that the moneys received would be so commingled as to cause irreparable loss to the citizens and taxpayers of the town? While it is settled that a court of equity has the power to appoint a receiver *pendente lite*, it is equally well settled that such power should not be exercised except in a clear case, when it is necessary for the prevention of manifest wrong and injury, and where the plaintiff would otherwise be in danger of suffering irreparable loss.

The jurisdiction exercised by courts of equity in administering relief by the extraordinary remedy of a receiver *pendente lite* is a branch of their general preventive jurisdiction, being intended to prevent injury to the thing in controversy, and to preserve it for the security of all parties in interest, to be disposed of as the court may finally direct. The power is to be exercised with the utmost caution, and only under such special or peculiar circumstances as demand summary relief. The appointment of such a receiver is regarded as one of the most difficult and embarrassing duties which a court of equity is called upon to perform. It is a peremptory measure, whose effect, temporarily at least, is to deprive of his property a defendant in possession before final judgment or decree. It is therefore not to be exercised doubtingly, but the Court must be convinced that the relief is needful. Since it is a serious interference with the rights of the citizen, it should only be granted for the prevention of manifest wrong and injury. And because it divests the owner of property of its possession before a final

hearing, it is regarded as a severe remedy, not to be adopted save in a clear case, and never unless the complainant would otherwise be in danger of suffering irreparable loss. The element of danger is an important consideration in the case; and there must be a well grounded apprehension of injury. To warrant the interposition of a court of equity by the aid of a receiver it must appear that possession of the property was obtained by the defendant through fraud; or that the property itself, or the income from it, is in danger of loss from the neglect, waste, misconduct or insolvency of the defendant. If the dispute is as to title only, the Court very reluctantly disturbs possession by a receiver. And as against a defendant in the possession and enjoyment of property which is the subject matter of the litigation, equity always proceeds with extreme caution in appointing a receiver. *High on Receivers*, §§ 3, 7, 11 and 19.

In the case of *Owen v. Homan*, 4 *H. L. C.* 997, 1032, and noted by Mr. High, the doctrine is stated by the Lord Chancellor, as follows:

"The receiver, if appointed in this case, must be appointed on the principle on which the Court of Chancery acts, of preserving the property pending the litigation which is to decide the right of the litigant parties. In such cases the Court must of necessity exercise a discretion as to whether it will or will not take possession of the property by its officer. No positive, unvarying rule can be laid down * * * . Where indeed the property is as it were *in medio*, in the enjoyment of no one, the Court can hardly do wrong in taking possession. * * * Such is the case when a receiver of a property of a deceased person is appointed, pending, etc., * * * . But where the object of the plaintiff is to assert a right to property of which the defendant is in the enjoyment, the case is necessarily involved in further questions. The Court by taking possession at the instance of the plaintiff may be doing a wrong to the defendant; in some cases an irreparable wrong. * * * In all cases, therefore, where the Court interferes by appointing of a receiver of property in the possession of the defendant before the title of the plaintiff is established by decree, it exercises a discretion to be governed by all the circumstances of the case."

Such are the principles that govern courts of equity in the appointment of receivers *pendente lite*, as laid down by Mr. High and other textwriters, as well as by the courts in adjudged cases. Indeed, the authorities are quite uniform on the subject.

Applying such rules or principles to the facts of the present case, what should be the action of the Court? There is no proof or averment that the defendant company obtained possession of the properties by fraud; and it is not shown, as above stated, that the company is insolvent. Do the facts show that there is any imminent danger that the properties in controversy, or the income arising therefrom, will be wasted, lost, removed, or seriously injured if left in the possession of the defendant company until the determination of the cause, or that the complainants will suffer irreparable loss thereby? It does not appear that either the waterworks or the electric light plant is being used or operated recklessly or inefficiently, or so as to cause injury thereto. Indeed, it is not shown that they are used with less care, or in any wise different from the way they were used before the change of possession and management took place. It is not proved that the citizens of the town are not as well served with both water and light now as formerly, or that the properties, after two months operation by the defendant company, are not in as good condition as before. Upon what facts, therefore, can a reasonable apprehension of danger and irreparable loss be predicated? There must be something more than a possibility of danger and loss to justify the Court in exercising the unusual and extraordinary power of appointing a receiver. The complainants may, and no doubt do, fear that such danger exists and that such loss may happen; but the facts must show that there is reasonable, probable and substantial cause or ground for such fear before the power invoked can be exercised by the Court. In support of their claim that the facts in the present case warrant the Court in appointing a receiver, the complainants have cited the case of *Elk Fork Oil & Gas Co. v. Foster*, 99 *Fed.* 495, which they insist is very much in point, and closely analogous to the present one. The Court in that case exercised a discretion as favorable to the plaintiff, as is ordinarily done, but no doubt the appointment of a receiver was justified under all the facts and circumstances, which are not very fully reported. The subject-matter in controversy was gas and oil rights, and the bills and cross-bills showed conflicting claims thereto. All the

parties were under injunction. The causes were heard on motions for injunction. Each side asked for injunction against the other. All concurred in the necessity of operating the property. Each asked that he should be allowed to operate it, and, of course, to be protected in doing this. The title was in dispute. The Court had concluded to continue the injunctions. As it was deemed necessary that the property should be operated, the only question was which should operate it. Each side craved permission to do so. The Court would not consent to give either party this authority, and preferred to select its own agent, to name its own receiver. The appointment of a receiver was the necessary corollary to the case presented. The case was in the Circuit Court and Judge Simonton in delivering the opinion said:

"Without the action of the court pending the consideration of the controversy, there was danger of irreparable mischief to the interests of that party to whom the results of the case might award the property. Under the circumstances, using the lights then before him, the learned and experienced judge of the district court determined to put the property in the custody of the court."

There are at least two facts which clearly distinguish that case from the one at bar, viz.: (1) It does not appear that the properties were in the actual possession of the defendants in the sense that they are in this case. Certainly the oil and gas wells were not being operated, nor apparently had they been found. (2) It appears that the Court was satisfied there was danger of irreparable mischief to the interests of the party to whom the results of the case might award the property, if a receiver was not appointed.

After a careful consideration of all the facts and circumstances of the case before me, and the principles of equity applicable thereto, I am of the opinion that the Court would not be justified, at this time, in appointing a receiver to take, hold and operate the properties in controversy, which are now in the possession of the Newark Water and Electric Company. A receivership in this case would not only be unwarranted, in my judgment, by the facts, but would involve an expense that

would be burdensome and unfair, under the circumstances. The sole question in this case seems to be the right of possession, which depends upon the validity of the lease under which the defendant company holds the properties in controversy. This question cannot be determined, as I have heretofore held, at this stage of the case, nor until after a full hearing is had. Nothing I have said, therefore, in this opinion is to be regarded as indicating in any way what will be the final determination of the case. While I am of the opinion that I cannot, for the reasons stated, appoint a receiver *pendente lite* in this case, I nevertheless think it important that the properties involved in this litigation, although in the possession of the Newark Water and Electric Company, should be preserved in their present condition so far as is compatible with their proper and continued operation, which all parties desire. I direct, therefore, that a preliminary injunction issue restraining the Newark Water and Electric Company, during the pendency of this suit, from disposing of them, from abusing or injuring the same, or altering their present condition, except so far as may be necessary for their proper management and operation. And in order to better secure this, it is ordered that the said Newark Water and Electric Company give to the Council of Newark a bond in the penal sum of $20,000, with surety to be approved by the Chief Justice.

Let an order be entered accordingly.

NOTE. In accordance with the foregoing opinion, an order granting a preliminary injunction was entered, which included an order for the filing of the bond to the Council of Newark within ten days. The Newark Water and Electric Company failed to file the bond within the time specified, and thereafter upon motion of the solicitors for the complainants, the solicitor for the Newark Water and Electric Company assenting thereto, a receiver *pendente lite* was appointed on May 1st, 1911.