EMILY R. COOLING, GUARDIAN AD LITEM OF SEVERSON B. COOLING 3D, and ALICE BALL COOLING, Minors,

*vs.*

SECURITY TRUST COMPANY, a corporation of the State of Delaware, Trustee Under the Last Will and Testament of SEVERSON B. COOLING, SR.

*New Castle, October 9, 1946.*

*W. Thomas Knowles,* of the firm of Knowles & All-mond, for complainant.

*W. Reese Hitchens,* of the firm of Hering, Morris, James & Hitchens, for defendant.

SEITZ, Vice-Chancellor: This is the decision on defendant's motion to dissolve a mandatory preliminary injunction heretofore entered in this cause.

The bill of complaint was filed by Emily R. Cooling as guardian ad litem by appointment of this court for her two minor children who are beneficiaries under a certain trust, the terms of which are set forth in an opinion filed in this court in the case of *Security Trust Company, et al., v. Cooling, et al.,* 28 *Del.Ch.* 303, 42 *A.2d* 784.

The defendant is the Security Trust Company, trustee under the last will of Severson B. Cooling, Sr., and as such is trustee of the estate of which the minors heretofore mentioned are beneficiaries.

It also appears that the defendant, Security Trust Company, is the guardian of the same minor children by appointment of the Orphans' Court of this state. It is also a co-executor of the estate of Severson B. Cooling, Sr., and its activities in that behalf should be challenged by the defendant as trustee, according to complainant.

The bill had attached thereto what were described as exceptions, which the complainant contended the defendant as trustee should file to its accounts as co-executor. It also set forth that though requested defendant refused to file the exceptions mentioned. The bill then recited that the complainant as guardian *ad litem* for the minor children had no way of knowing whether or not the defendant trustee had received from the executors the written notice required under the constitution and laws of the State of Delaware

of the filing of the executors' accounts so as to bar the trustee from filing exceptions to such accounts.

The complainant then alleged as follows:

"Your Complainant alleges that an irreparable damage will be done to the estate of the said minors if said Exceptions are not filed, and filed immediately, unless an admission is made by the Executors that they have not complied with the Constitution and Statute of the State of Delaware, in respect to the sending of notice of the filing of the account; * * *."

The bill prayed for a mandatory preliminary injunction directing the defendant trustee to file in the Orphans' Court exceptions to the final account filed by it as a co-executor of the estate of Severson B. Cooling, Sr., and also to file exceptions to all other accounts to which written notice has not been received of the filing.

The other prayers of the bill are not important at this stage of the proceeding.

Prior to the hearing on the preliminary injunction the complainant directed an interrogatory to the defendant asking it to file any writing received by it with respect to the filing of the accounts of the co-executors of the estate of Severson B. Cooling, Sr., or admit that no written notice of the filing of any account in such estate was ever received by it. The defendant trustee filed its answer to the interrogatory in which it was stated that it had not received any written notice of the filing or settling of any of the accounts filed by the executors under the will of Severson B. Cooling, Sr., but that it has had actual knowledge of said accounts and the filing and settling of the same.

Preliminarily I pass over the fact that the bill requested the admission to be made by the executors, because the interrogatory was directed to the trustee and was answered by the trustee. Since the defendant is acting in various capacities here, the variance is understandable but, in truth, the trustee was doubtless the one to answer the interrogatory.

Even though complainant received the answer to the interrogatory before the hearing on the preliminary injunction, she nevertheless contended that she was entitled to a preliminary injunction as prayed because the answer to the interrogatory was legally ambiguous and left complainant without legal assurance that the defendant trustee, by having actual knowledge, would not be foreclosed from attacking its own account as a co-executor, if exceptions were not filed within the three month period.

While the bill of complaint left much to be desired in the way of particularizing the urgent need for the assistance of this court, I, nevertheless, felt that there was sufficient evidence of the need to warrant the issuance of the mandatory preliminary injunction directing the defendant trustee to file the exceptions in the Orphans' Court. The urgency arose from the fact that under complainant's theory the statute of limitations would run before a final hearing could be had.

At the time I granted the preliminary injunction, I stated, in effect, it was not the function of this court to pass on the merits of the proposed exceptions, or to construe the provisions of the State constitution involved in order to see whether or not it was imperative that the trustee file exceptions. I concluded that I was called upon only to determine whether a "substantial need" for the relief requested had been demonstrated. I concluded that the complainant's rights were sufficiently insecure in the Orphans' Court to warrant this court in granting the limited relief requested. It was my feeling that the *status quo* was actually being preserved by granting the affirmative relief, and that the defendant was not at all prejudiced because I was deciding nothing with respect to the merits of the controversy.

Moreover, and of extreme importance, I concluded that this court had the power under the circumstances to grant the mandatory preliminary injunction, and that the Delaware cases of *Tatem & Canby v. Gilpin*, 1 *Del.Ch.* 13; *Gray,*

*Attorney General, v. Council of Newark,* 9 *Del.Ch.* 171, 79 *A.* 735, 739; *Tebo v. Hazel, (Del.Ch.)* 74 *A.* 841, do not hold that this court is powerless in all cases to grant a preliminary injunction, mandatory in character.

The application for the preliminary injunction had to be heard and disposed of on the same day due to the possible running of the statute of limitations against the filing of exceptions to the accounts of the executors. As a consequence, no opinion was filed.

The defendant trustee now moves to dissolve the mandatory preliminary injunction for the reason that this court "has no power, authority or jurisdiction to direct the issuance of a Preliminary Injunction, mandatory in nature and such action was an abuse of discretion."

Defendant's solicitor argues that the above-cited Delaware cases clearly hold "that the Court of Chancery has no jurisdiction, power or authority to decree the issuance of a preliminary injunction, mandatory in nature." I cannot agree that such a generalization is justified from a reading of the cases. True it is that the courts in the cases mentioned concluded that the power did not exist under the attendant facts to grant the mandatory preliminary injunction requested. It seems to me, however, that "power" as used in the Delaware cases is no more than a conclusion that in the ordinary situation the issuance of a mandatory preliminary injunction would violate the sound legal discretion which the Chancellor is required to exercise. Language and quotations contained in certain of the Delaware cases relied upon by defendant's solicitor indicate quite clearly that the court recognized the possibility of the existence of an unusual case where a mandatory preliminary injunction would issue. In fact, such an injunction was issued in *Williamson, et al., v. McMonagle,* 9 *Del.Ch.* 380, 83 *A.* 139, and the power to do so was clearly indicated in *Nebeker, et al., v. Berg, et al.,* 13 *Del.Ch.* 6, 115 *A.* 310. Such a situation was described in some of the cases as an "exception" to the

general rule. However, without regard to nomenclature, I feel that as applied to the present facts, the question involves the case where the power exists and should be exercised whether such a situation be considered an exception to the usual rule, or—as I prefer it—merely a principle of law applicable to a particular set of facts.

To consider the problem as a question of power rather than one of discretion is to fail to take cognizance of the situation which warranted and necessitated the creation of equity jurisdiction, viz., the limited and rigid remedies at law. The power to grant a mandatory preliminary injunction is lacking in this court only if the court so concludes of its own initiative, because I know of no constitutional or statutory limitation in this respect. If the exercise of the power is susceptible of such abuse that it should not be available to a court of equity, then let the appropriate body remove such power. I prefer to believe that the power exists in a proper case, and that it becomes the duty of this court to determine whether, under the circumstances, it should be exercised. Such a conclusion to my mind is not inconsistent with the Delaware authorities, and is by no means unusual. As Mr. Pomeroy states in a footnote in his *Treatise on Equity Jurisprudence, Vol. 4, (5th Ed.,)* § 1359a:

"16. Preliminary mandatory injunctions have undoubtedly been granted more freely by the English courts than by the American. Indeed, it has been said in some American decisions that a mandatory *interlocutory* injunction would never be granted. This doctrine is not only opposed to the overwhelming weight of authority, but is contrary to the principle which regulates the administration of preventive relief, and is manifestly absurd."

The fact that this matter involves the jurisdiction of this court over a trustee adds strength to the court's position that the mandatory preliminary injunction was properly issued because its issuance served to preserve the *status quo* in that it placed the trustee in the position where he could not, through his own inaction, lose a possible trust asset,

namely, a cause of action against the executors, albeit the defendant is suing itself, so to speak. See generally 4 *Pomeroy's Equity Jurisprudence*, (*5th Ed.*) §§ 1339, 1340; 4 *Bogert on Trusts and Trustees*, § 861, *at page* 2489; 2 *Scott on Trusts*, § 199.2. It should be noted that the authorities cited which demonstrate the injunctive jurisdiction of a court of equity over trustees are obviously not decisive of the question of the power of this court to grant a mandatory preliminary injunction. However, courts of equity have jealously guarded their jurisdiction over trusts and trustees to the end that substantial rights and equities would be adequately protected regardless of legal fictions and technicalities. I should hesitate long before concluding that the power to preserve a possible trust asset is absent because the possible preservation of the asset requires the issuance of a mandatory preliminary injunction. Since the need for the extraordinary remedy can justly exist, I feel that the conclusion is thereby justified that discretion rather than power is involved in determining the right to its issuance.

However, it is equally important to emphasize that a mandatory preliminary injunction should only issue to preserve the *status quo* in the true sense of that term. In my opinion, the issuance of the injunction here served that purpose. This court recognizes that the power exists, but it also realizes that there are stringent prerequisites to the exercise of the power.

Only by the issuance of the mandatory preliminary injunction could it be assured that a possible trust asset would not be lost here. When such a showing is made, I feel that this court has the power and the duty to issue an appropriate injunction. I conclude, therefore, that this court had the power, authority, and jurisdiction to direct the issuance of the mandatory preliminary injunction under the facts shown.

Turning now to the defendant's second point, did this court abuse its discretion in directing the issuance of the injunction in question?

The following appear to constitute defendant's reasons why this court abused its discretion:

1. The issuance of the mandatory preliminary injunction was not necessary to preserve the *status quo* because the defendant, through its solicitor, offered at the hearing to waive any defense to the effect that actual knowledge by the trustee of the filing of the accounts by the executors constituted the equivalent of the written notice required by our constitution and statute. Since this was the only ground of irreparable damage alleged in the bill, and since such possible damage was removed by the solicitor's offer, there was no possible irreparable damage which would justify the issuance of the extraordinary remedy.

2. As a corollary to the first point, defendant contends that under the Delaware cases the right to a preliminary injunction must be so clear that its denial would be captious and unconscionable, and complainant has not demonstrated such a clear right.

As to the first point, did the offer of the defendant's solicitor remove the possibility of irreparable damage which consisted of the running of the statute of limitations against the filing of any exceptions to the executor's accounts. At the time the offer was made, there was a real possibility that the three month period for filing exceptions would expire at the close of the day on which the hearing was held. This would be true, however, only if there had been a compliance by the executors with the requirements of *Article IV, Section 34 of the Delaware Constitution* which provides:

"An executor or administrator shall file every account with the Register of Wills for the county, who shall, as soon as conveniently may be, carefully examine the particulars with the proofs thereof, in the presence of such executor or administrator, and shall adjust and settle the same according to the right of the matter and the law of the land; which account so settled shall remain in his office for inspection; and the executor, or administrator, shall within three months after such settlement give notice in writing to all persons entitled to shares of the estate, or to their guardians, respectively, if residing

within the State, that the account is lodged in the said office for inspection.

"Exceptions may be made by persons concerned to both sides of every such account, either denying the justice of the allowances made to the accountant or alleging further charges against him; and the exception shall be heard in the Orphans' Court for the county; and thereupon the account shall be adjusted and settled according to the right of the matter and law of the land."

At the time the offer was made by the solicitor for the defendant, I entertained grave doubts, with all due deference to the solicitor for the defendant, that he was in a position to make such a binding commitment. In the first place, the solicitor appeared in the proceedings for the defendant Security Trust Company trustee. The possible defense, based upon the expiration of the three month period for filing exceptions to executors' accounts, was available, of course, not to the trustee but to the executors. The Security Trust Company was but one of two executors, with the other executor being an individual. Neither the individual executor nor the bank as executor was or is a party to this proceeding. It seemed to me that the effect of the solicitor's offer presented so many imponderables which were beyond his and this court's control, including the fact that the possible defense and waiver thereof would not even be presented in this court, that I concluded that my decision should not be permitted to turn thereon. Time being of the essence, I felt that sound discretion warranted me in refusing the offer of the defendant's solicitor.

Defendant's second point is that the complainant did not show a clear right to the relief as required under the precedents in this state, e. g., *Williamson, et al., v. McMonagle, supra.*

Defendant argues, *inter alia,* that the Delaware cases clearly demonstrate that the giving of the written notice required by our constitution and statute (*Article IV, Section 34; Revised Code of Delaware 1935, paragraph 5150*) is a prerequisite to the commencement of the running of

the three month statute of limitations. *Allen, et al., v. Leach,* 7 *Del. Ch.* 83, 29 *A.* 1050; *Larkin and Stites v. Simms, Adm'r.,* 2 *Pennewill* 543, 46 *A.* 750.

Since by answer to an interrogatory the defendant had stated that no such written notice had been received, it reasons that the statute of limitations has not commenced to run and concludes therefrom that no need for the hasty preliminary relief was warranted to prevent the maturing of such a defense.

The cited cases certainly held that the statute of limitations had not run against the exceptants there involved because they had not received the written notice provided for both in the Delaware constitution and statute. However, the complainant here feared that since defendant in its answer to the interrogatory heretofore mentioned had also admitted having *actual* knowledge of the filing of the accounts, that such knowledge might well be equivalent to or better than the written notice provided for in the constitution and statute—which would mean that the statute had run against the right to file exceptions. Such a possible defense is, of course, well recognized in the law generally (the possibility is at least, in a very slight way, recognized in *Larkin and Stites v. Simms, Adm'r., supra*), and while the defense *might* not be available—at least against the Security Trust Company—because the defendant appears on both sides of the controversy, nevertheless, I did not feel that the complainant should be forced to run the legal risk inherent in the situation.

There was nothing before me to warrant the conclusion that certain exceptions to the executors' accounts, which have been filed in the Orphans' Court by the present complainant as guardian *ad litem* of the same minor children by appointment of that court, would of necessity be recognized as properly filed, and if so would be a legally justifiable substitute for action by the trustee. Moreover, the difficulty here has nothing to do with the right of a court of

equity to direct a trustee to take action to preserve a possible trust asset. The difficulty arises from the fact that the defendant appears in conflicting positions.

Under all the facts and circumstances then and now within my knowledge, I do not feel that the issuance of the mandatory preliminary injunction directing the trustee merely to file exceptions in the Orphans' Court to its own account as one of two executors involved an abuse of discretion. This is especially true when the exceptions raise serious and substantial questions which should be decided.

If the Security Trust Company in its capacity as co-executor should see fit to test the right of the guardian *ad litem* appointed by the Orphans' Court to file the exceptions, which I understand have been filed in the Orphans' Court to the accounts of the co-executors, and if it is made to appear to me that after such test, it is clear that such exceptions can be prosecuted by that guardian *ad litem* and that such exceptions are substantially the same as those filed by the defendant trustee, I will then consider advising the entry of a decree authorizing the defendant trustee not to prosecute its exceptions to its own account as executor. In this manner, the merits of the controversy will be litigated in the proper forum, and the defendant will have been removed from the anomalous position of having to litigate with itself. If this is not possible, other remedies must be explored.

The motion to dissolve the mandatory preliminary injunction heretofore entered in this cause is denied.

An order accordingly will be advised.