108 A.2d 173 (1954)
Lillian SIMMONS et al.
v.
Edmund F. STEINER et al.
Lillian Simmons, an infant, by her Guardian ad litem, Perry A. Reese,
Madeline Staten, an infant, by her Guardian ad litem, Elenora Staten,
Annie Ruth Thompson, an infant, by her Guardian ad litem, Cassie Lee Thompson,
Edna Turner, an infant, by her Guardian ad litem, Millicent Turner,
Irene Pettyjohn, an infant, by her Guardian ad litem, Naomi Waples,
Charles Fleming, Jr., an infant, by his Guardian ad litem, Charles Fleming, Sr.
Kenneth Baynard, an infant, by his Guardian ad litem, Garland Baynard,
Orlando Camp, an infant, by his Guardian ad litem, Gertrude C. Pennewell,
Eugene Harris, an Infant, by his Guardian ad litem, Thomas Harris,
Ronald Vann, an infant, by his Guardian ad litem, Catherine Vann,
Perry A. Reese, Elenora Staten, Cassie Lee Thompson, Millicent Turner, Charles Fleming, Sr., Garland Baynard, Gertrude C. Pennewell, Thomas Harris, Catherine Vann, and Naomi Waples, Plaintiffs,
v.
Edmund F. Steiner, George F. Adams, David B. Greene, George Robbins, Members of the Board of Education of the Milford Special School District,
Ramon C. Cobbs, Superintendent of the Milford Special School District, and M. Alexander Galsmire, Defendants.
Court of Chancery of Delaware, Sussex.
October 14, 1954.
*174 Louis L. Redding, Wilmington, for plaintiffs.
Howard E. Lynch, Jr., Dover, for defendants.
H. Albert Young, Atty. Gen., appearing amicus curiae by leave of Court.
MARVEL, Vice Chancellor.
Plaintiffs[1] live in the Milford Special School District where defendants operate one public high school, which is maintained by general funds of the State of Delaware supplemented by taxes levied against real estate in the district.
It is alleged in the complaint and it is a conceded fact that plaintiffs applied for admission to the Milford High School at the beginning of the present autumn term and were enrolled as students by agents and representatives of the then duly constituted Board of Education of the district.[2]
It is further alleged and admitted by defendants that on September 30, 1954, the present Board of Education of Milford, through its president, Edmund F. Steiner, took action withdrawing plaintiffs' names from the records of Milford High School. Notice of such action was sent to the parents or guardians of the plaintiffs all of whom are parties to this action.
It is conceded that plaintiffs' names were removed from the records of Milford High School solely because of color and race, and that plaintiffs have no administrative or adequate legal remedy available to correct this asserted wrong. The allegations *175 of the complaint establish a case within the jurisdiction of this Court.
The complaint alleges that the exclusion of plaintiffs from the only public high school in the district in which they live constitutes a violation of their rights to equal protection of the laws and to due process of law. It is also asserted by plaintiffs that separate facilities for education near Milford are not equal to those afforded by Milford High School and that as yet the State Board of Education has not sought to transfer plaintiffs to another school outside of their school district. Evidence of the existence and nature of separate facilities will be considered only on final hearing if such is ordered.
In the cases consolidated for decision in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, it was decided that the placing of children in separate schools on a racial basis even where physical and other "tangible" factors of the separate schools are equal, deprives the children of the minority race of equal educational opportunities and is in itself a violation of the equal protection of the laws guaranteed by the Fourteenth Amendment.
The entry of decrees in the cases decided on May 17, 1954 has been withheld pending further proceedings on methods of implementing the Court's decision. Argument is now scheduled for early in December.
The right to equal protection of the laws, however, is a personal and present one. Gebhart v. Belton, Del., 91 A.2d 137, 143;[3] Sipuel v. Board of Regents of University, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247; Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114.
In the light of the sweeping declaration of the Supreme Court on the unqualified right of all persons to a public school education in which consideration of race plays no part, it necessarily follows that plaintiffs and those similarly situated are equitably entitled to an education at Milford High School. Under the facts of this case how long must plaintiffs wait?
Can this Court enter a decree pending development by the Supreme Court of the United States of plans for carrying out its decision of May 17? If so, can such a decree be entered pending final hearing in this case?
Defendants contend that the May 17, 1954 decision of the Supreme Court of the United States holding that separate facilities for public education for the plaintiffs and for those similarly situated deprived them of the equal protection of the laws has not reached the decree stage and does not govern the decision of the case at bar.
This argument overlooks the fact that whether eventual decrees in the decided cases are res judicata for those similarly situated or merely bear the force of stare decisis, the Court has given its decision, and decrees were withheld only because they will have wide applicability under a great variety of local conditions. The Supreme Court evidently was of the opinion that it could not without further argument and consideration frame decrees having a broad compulsory scope. This Court at this stage is concerned solely with the constitutional rights of ten students to continue their education at a school to which they had been admitted during a period of permissive integration.
Plaintiffs were admitted to Milford High School at the beginning of the present school year. They are seeking to preserve their status as students in a school in which they are entitled to be educated. It has been conceded that the names of plaintiffs were dropped from the records of the school solely because of color and race.
Except for their names now being withdrawn from the records of the school, plaintiffs' position is no different than that of other Negro students of Delaware now attending partially integrated schools on the basis of their rights to equal protection under *176 the Constitution of the United States. It would be unrealistic to maintain that these other students are unlawfully in school during the present phase of permissive integration.
I hold that plaintiffs, having been accepted and enrolled, are entitled to an order protecting their status as students at Milford High School; that their right to a personal and present high school education having vested on their admission, they need not wait for decrees in the cases decided by the United States Supreme Court in May as a prerequisite to the relief they seek.
Can this Court, however, now direct the defendants to reinstate plaintiffs as students at Milford High School, and in effect grant plaintiffs the entire relief they might hope to receive on final hearing?
There is no doubt but that the Delaware Court of Chancery has the power and authority to grant an injunction mandatory in form, Cooling v. Security Trust Company, 29 Del.Ch. 286, 49 A.2d 121, in order to preserve status quo in the true sense of that term. The last peaceable, noncontested status of the plaintiffs preceding this controversy was membership in the student body of Milford High School. Equity will preserve this status against wrongful change, Fredericks v. Huber, 180 Pa. 572, 37 A. 90, Steggles v. National Discount Corporation, 326 Mich. 44, 39 N.W.2d 237, 15 A.L.R.2d 208, and notes at page 234 et seq. of 15 A.L.R.2d.
I hold that plaintiffs' constitutional rights to a non-segregated education vested on their admission to Milford High School, rights which defendants concede but wish to withhold for the present. I find plaintiffs' legal rights "clear and convincing", that they are entitled to mandatory relief, and that any inconvenience or distress to defendants must give way before the much greater injury which would be inflicted on plaintiffs by denial of their personal and present rights.
Defendants contend that plaintiffs have not shown that denial of relief will cause them irreparable injury. Because the years of grade and high school are formative ones, the United States Supreme Court held that the need for the equal protection of the laws for students of such ages was more compelling than for graduate students. A continuing denial of plaintiffs' personal and present rights irreparably injures them.
The rule that mandatory injunctive relief may be granted without a full hearing was recognized in Delaware in Gray v. Council of Newark, 9 Del.Ch. 171, 79 A. 735, 739; in Williamson v. McMonagle, 9 Del. Ch. 380, 83 A. 139 a mandatory preliminary injunction was granted which gave plaintiffs the entire relief sought, the denial by the defendants of plaintiffs' clear legal right being deemed captious or unconscionable.
I hold that plaintiffs have a clear legal right to have their status as students of Milford High School preserved pending final hearing and an order will be entered enjoining defendants from denying to plaintiffs because of color or race their vested rights to attend Milford High School.
Order on notice.
NOTES
[1] Plaintiffs in this opinion refers to infant plaintiffs.
[2] While it appears that the Delaware State Board of Education did not give its own prior approval to the Milford plan to admit Negro students (affidavit of October 12, 1954, of George R. Miller Jr.), I attach no legal significance to such lack of prior approval. See opinion of September 23, 1954, of Attorney General, attached as ex. A to complaint and 14 Del.Code 1953, § 901 et seq.
[3] "Since the right to equal opportunity is a personal one, it cannot be denied because of limited demand, nor depend on the number of applicants."