JAMES F. JONES, executor of the last will and testament of ANN J. CHAPMAN, deceased, defendant below, appellant, *vs.* MAGGIE H. REES and JOHN H. STOOPS, executors of WILLIAM R. REES (the said WILLIAM R. REES being Trustee by appointment of the Chancellor of the State of Delaware under Item Seven of the last will and testament of ABEL JONES, deceased), complainants below and JOHN McCROONE JONES, ANN DuBois, MARY STEWART, FRANK A. JONES, BLANCHE JONES, MABEL JONES, ANNA M. BAYLIS, DAVID JONES, ABEL JONES, DANIEL W. JONES, RHODA ECKLES, LYDIA H. JONES, MARY WOOLFORD and JAMES F. JONES, defendants below, respondents.

*Appeal from Chancellor—Will; Construction of—Rule in Shelley's Case—Personal Property—Intention of Testator—Trust— Life Estate—Executor.*

1. The rule in Shelley's case governs the transmission of real property in this State in cases which come within its terms. The rule, however, is an arbitrary one. It is strictly a rule of law and not of construction or intention. Where the language used in the instrument brings the case within the rule, the fact that it was the intention of the grantor or devisor that the rule should not operate, is of no importance.

2. This arbitrary feature has induced courts of law and equity to construe the rule most strictly, and when practicable, to take cases out of its operation.

3. Courts are not inclined to extend the rule to personal property. Both reason and authority are against such extension. The trend of modern decisions and legislation is altogether the other way.

4. Under the will the trustee is directed to "apply the income as received, to the maintenance and support of my daughter Ann Jane during her lifetime, and from and after her decease, it is my will and I direct that all the said property, money, stock," etc. * * * *. "shall be held by the said Thomas A Rees free and discharged from the aforesaid trust, to and for the use of the heirs and assigns of the said Ann Jane forever." *Held*, that Ann Jane took only a life estate in the trust property, and that the *corpus* of the funds after her decease went to her heirs, and not to her executors.

(*January* 20, 1908.)

Lore, C. J., and Associate Judges Spruance, Pennewill and Boyce, sitting.

*George M. Jones* and *William M. Hope* for appellant.

*Henry Ridgely* and *Thomas C. Frame* for respondents.

Supreme Court, January Term, 1908.

Appeal from Chancellor (No. 2, January Term, 1906).

Lore, C. J., delivering the opinion of the Court:

This is an appeal from a decree of the Chancellor made October 14, 1905, directing certain trust funds under the will of Abel Jones, deceased, to be paid to the heirs at law of Anne J. Chapman.

So far as it relates to the subject matter of this suit the will of Abel Jones, which was dated December 3, 1844, provides as follows:

"Item Seventh. I give, devise, bequeath, assign, transfer and set over unto my friend Thomas A. Rees of Duck Creek Hundred aforesaid, and to his executors, administrators and assigns, twenty shares of the capital stock of the Bank of Smyrna, standing in my name on the books of said bank, and all the dividends now due or which may become due thereon in my life time; also a note which I hold as hereinbefore stated against my said son James H. Jones, for the sum of two hundred dollars, with all the interest due thereon; also one bedstead, and bed well furnished with all necessary clothing, the bureau which is in the parlor chamber, the washstand and bowl known as my daughter's Ann Jane's, and the toilet table and dressing table known as hers, and also a sufficient portion of the residue of my personal estate (the bequests to my son Alexander and to my said wife being first delivered to them) to make up together with the said

bank stock at the par value thereof, and the dividends now due and to become due thereon during my lifetime, and the said note due to me from my son James, with the interest thereon at the time hereinbefore appointed for the payment thereof and the amount of the interest paid by me on the debt of my son James, to the Smyrna Bank as aforesaid, and the said above named articles of household furniture, and the said yearly sum of twenty-five dollars, and the said portion of the said residue of my personal property to be held by him, the said Thomas A. Rees, and his executors, administrators and assigns, nevertheless upon trust as to the specific articles of household furniture to permit and suffer my afflicted daughter Ann Jane, who is deaf and dumb, to use the same as her property, and as to the dividends on the said Bank stock which may fall due and become payable after my decease, to himself receive and apply the same to the maintenance and support of my said daughter and as to the dividends on the said bank stock, which may be unpaid at the time of my decease, and as to the said note due from my son James, and the interest thereon, and the amount of interest paid by me on the death of my son James to the Bank of Smyrna, as aforesaid, and the said yearly sum of twenty-five dollars, so, paid as aforesaid by my son Alexander to the said trustee, and the said portion of my said personal estate, mentioned above in this item, to collect and receive the same and invest the same when received as soon as conveniently may be in some good and safe and profitable investment and apply the dividends or interest arising from such investment or investments together with the dividends to become due, as aforesaid, on the said bank stock, after my death, as the same may be received to the maintenance and support of my said daughter, Ann Jane, during her life, and from and after her decease it is my will and I direct that all the said property, moneys, stock, goods, chattels, rights, credits and effects, shall be held by the said Thomas A. Rees, free and discharged from the aforesaid trust, to and for the use of the heirs and assigns of the said Ann Jane forever "

After the death of Abel Jones, the testator, Thomas A. Rees the trustee named in said item seven assumed and discharged the duties of trustee thereunder, until his death in April, 1847. Then John R. Rees, his administrator, voluntarily discharged the duties of such trustee until he died, October 28, 1884. Upon his death William R. Rees was appointed trustee by the Chancellor, and upon his death, which was after the commencement of this action, Maggie H. Rees and John H. Stoops his executors were by suggestion, on the nineteenth day of November, 1903, made parties complainant, and now hold the trust fund in dispute.

Ann Jane, the daughter, after the death of her father, the testator, married one       Chapman, and had two children, Robert and Howard, both of whom died during her lifetime, unmarried and without issue. She died in 1903, leaving a will, of which James F. Jones, one of the parties hereto, is the executor.

During her life the income arising from the trust funds named in item seven was duly applied to her maintenance and support by the respective trustees above named.

Upon her death her said Executor, James F. Jones, claimed the *corpus* of the trust fund as a part of her estate; and the heirs at law of the said Ann J. Chapman claimed the same as their property under the terms of the will of the said Abel Jones.

A bill was filed by the trustee for instruction from the Chancellor as to the rightful disposition of the disputed fund. Upon the interpleading of the parties interested, the Chancellor decreed the funds to the heirs at law of Ann J. Chapman.

From this decree this appeal was taken.

The single question for our determination is, to whom does this trust fund belong.

The executor of Ann J. Chapman contends that under the will of Abel Jones the trust funds belonged absolutely to his said daughter Ann, for the reason;

*First*, that such is the intention to be drawn from the language of the will;

*Second*, that whether such was the intention of the testator or not, having bequeathed the property to Ann Jane her heirs and assigns, the rule of law, in analogy to the rule in *Shelley's case*, vests the property in her absolutely.

The case has been very fully argued upon elaborate briefs prepared by counsel for the respective parties, and has received the most careful consideration of the Court.

The rule in *Shelley's case*, unquestionably governs the transmission of real property in this State in cases which come within its terms.

*Griffith vs. Derringer*, 5 *Harr.* 284; *Wright vs. Gooden*, 6 *Houst.* 397.

Of this rule as applied to real estate generally, Chancellor Kent, in 4 *Kent* 218, uses this language.

"It has been firmly established as an axiom in the English law of real property for near five hundred years; and yet, it is admitted to interfere in many cases with the presumed, and in many others with the declared intention of the parties to the instrument to which it is applied. The rule as to legal estates has had a prescriptive and uncontroverted authority; but courts of equity have not considered themselves bound to an implicit observance of it."

This view of the rule was approved by our own Courts in *Gross vs. Scheeler*, 7 *Houst.* 286. In that case Chief Justice Comegys says it is "a rule which has done more to produce litigation and (when sustained) thwart the actual purpose of a testator, than all the other arbitrary rules combined. While it remains a rule of law of property this Court must abide by it; but when in the construction of a will it is not clearly and indisputably applicable no countenance should be given to it."

The rule is an arbitrary one. It is strictly a rule of law, and not of construction or intention. Where the language used in the instrument brings the case within the rule, the fact that it was the intention of the grantor or devisor that the rule should not operate is of no importance.

This arbitrary feature has induced Courts of law and equity to construe the rule most strictly, and when practicable to take cases out of its operation.

25 *A*. and *E. Ency. of Law* (2 *Ed.*) 653.

The noted case of *Bagshaw vs. Spencer*, 1 *Veasey* 142, and the great case of *Perin vs. Blake*, 4 *Kent Com.* 231, indicate the tendency in England on this point.

The great difficulty in most cases seems to have been to settle, when the rule, and when the intention in opposition to the rule should prevail.

In England the rule as to legal estates is still in force.

*In re. Youmans*, 1 *Chancery* 720 (1901).

Many of the United States have either abolished or modified the rule.

It has been abolished by statute both as to deeds and wills, in Alabama, California, Connecticut, Georgia, Massachusetts, Minnesota, Missouri, New York, Ohio, Tennessee and Virginia;

As to wills, in New Hampshire and New Jersey.

It has never obtained in Kentucky and Maine.

This shows the tendency of modern thought and action toward the rule in cases of real estate coming strictly within its terms.

We are now, however, asked to extend the operation of the rule in this State to personal property.

It has been so extended in some of the States. The decisions on this point are conflicting and irreconcilable.

The courts of Maryland so extended the rule in the case of *Horne vs. Lyeth*, 4 *Har.* and *J.* 435. This was a *nisi prius* case and the subject matter a lease-hold estate. The case, however, has since been followed implicitly in that State.

In Rhode Island the intention of the parties prevails, where that intention appears.

*Tyler vs. Lindsay*, 14 *R. I.* 518.

In *Harnick vs. Franklin*, 6 *Eq.* 593, the Court uses this language: "There is no authority for holding that because the

rule in *Shelley's case*, 1 *Rep*. 219, applies to real estate it is to be applied to personal estates also."

This very question has been passed upon by the Courts of this State. In *Gross vs. Scheeler*, 7 *Houst*. 280, (1885) in a case practically similar to the one now under consideration, it was held by the Court that the rule has no application in the disposition of personal property, and seems to rely largely upon *Smith vs. Butcher*, *L. R.*, *Ch. Div.*, 10.

Chancellor Saulsbury affirms this view in *Mason vs. Bailey*, 6 *Del. Ch.* 129 (1888). This case seems to be very like the present case. It was thoroughly argued, and decided after a careful examination and analysis of all the authorities.

In *Keys Est.*, 4 *Pa. Dist.* 134, it was said by the Court: "The rule in Shelley's case does not, of course, apply to limitations of personal estate; but by analogy to it, under the rule that words which create an estate tail, where the subject is realty, confers an absolute estate where the subject is personalty."

This expresses accurately the contention in this case. A careful examination of the English cases cited by the appellant shows that the Courts in reaching their conclusions were not governed by the rule in *Shelley's case*, or by the rule in analogy thereto. While in one of the cases so cited, *Powel vs. Boggis*, 35 *Bev.* 541, the Court expressly says; "It is said that the word 'heirs' in a will of personalty is never a word of limitation. That is quite true, and it is quite true that the rule in *Shelley's case* is a technical rule and applies only to real estate."

From the conflicting American cases no reasonably clear conclusion can be reached.

We are not inclined to extend the rule to personal property. We think that both reason and authority are against such extension. Unquestionably the trend of modern decisions and legislation is altogether the other way.

The question, however, still remains—was it the intention

of the testator to give to his daughter, Ann Jane, the trust property absolutely, as disclosed by the language of the will.

The other portions of the will throw no light upon item seven.

The purpose of this item seems to be to provide for one of his children, whom he designates in that item as "my afflicted daughter Ann Jane, who is deaf and dumb."

The trust property was given to Thomas A. Rees, his executors, administrators and assigns, thus using the exact and full language for conveying the absolute estate to the trustee; in trust, however, as to the specific articles of household furniture to permit and suffer his daughter Ann Jane to use the same as *her property*; as to the *corpus* of the income-bearing funds, the trustee is to collect and receive the same and invest it when received as soon as conveniently may be in some good and safe and profitable investment. And the trustee is directed to "apply the income as received, to the maintenance and support of my daughter Ann Jane during her lifetime, and from and after her decease, it is my will and I direct that all the said property, moneys, stock, goods, chattels, rights, credits and effects, shall be held by the said Thomas A. Rees, free and discharged from the aforesaid trust, to and for the use of the heirs and assigns of the said Ann Jane forever."

Of the leading principles for the interpretation of wills, Chancellor Kent says (4 *Com.*, 595): "that the construction of them is so much governed by the language, arrangement and circumstances of each particular instrument, which is usually very unskilfully and very incoherently drawn, that adjudged cases become of less authority, and are of more hazardous application, than decisions upon any other branch of the law."

Giving to the words used in this bequest their usual and ordinary meaning, the testator seems to us clearly to say that his daughter Ann Jane was to have the income from the trust funds applied to her maintenance and support during her life

only, and that after her death her heirs were to take the *corpus* of the trust funds absolutely discharged from the trust.

The language used in this item shows that the testator understood the distinction between the words "heirs and assigns" and the words "executors, administrators and assigns." He uses the exact words which convey the absolute estate in the trust fund to the trustee, but uses other words in limiting his daughter's estate.

Again; he directs the trustee to permit his daughter Ann Jane to use the articles of household furniture named in this item as *her property*, but not so with respect to the interest bearing funds. This he carefully retains in the hands of the trustee.

Again; he has expressly designated the class of persons to whom the *corpus* of this trust fund shall go after the death of his daughter Ann Jane; viz., to her heirs and assigns. He could not name the individuals specifically who would take as her heirs, which could be determined only at her death, but he does name the class. We think the word "heirs" may fitly be considered as *"descriptio personarum;"* or, as Chancellor Saulsbury has said in the case of *Mason vs. Bailey,* as *"persona designata."*

After careful consideration of this item and a review of all the authorities produced upon both sides, we are clearly of the opinion that Ann Jane took only a life estate in the trust property, and that the *corpus* of the funds after her decease goes to her heirs, and not to her executor.

We therefore affirm the decree of the Chancellor, that the trust funds shall be paid to the heirs at law of Ann Jane Chapman in the proportion named in said decree.