SARAH T. M. FARRELL,
Complainant Below, Appellant,

*vs.*

JOSEPH WELLS FARIES,
Respondent Below, Appellee,

MABEL MITCHELL STEVENSON, ADA MITCHELL FENIMORE, ESTHER D. IRWIN MITCHELL, RAYMOND HARRY MITCHELL, JR., ESTHER DOROTHY MITCHELL BEATY, ELIZABETH IRWIN MITCHELL and WILLIAM COTTONHAM MITCHELL,
Intervening Defendants Below, Appellees.

*Supreme Court, On Appeal, October 28, 1941.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*Charles H. Lefevre,* of Washington, D. C., for appellant.

*John B. Hutton,* for appellees.

LAYTON, Chief Justice, delivering the majority opinion of the Court:

The complainant below, claiming ownership in fee simple of certain lands in Smyrna, Delaware, agreed in writing to sell them to Joseph Wells Faries, the respondent below, and to convey to him a good and sufficient fee simple title thereto. Thereafter, the respondent gave notice that he would not perform the contract for the reason that the complainant could not convey to him such title. The complainant sought specific performance of the contract. The Chancellor dismissed the bill in an opinion reported *ante p.* 227, 17 *A.* 2*d* 17. The complainant has appealed.

The appellant asserts title to the lands in question through the will of her uncle, William C. Mitchell, the devise to her being as follows:

"I give and bequeath to my said niece, Sallie Trigham Mitchell, the lot of ground situated * * * for and during her life time and no longer, and after the death of my said niece, if she leaves lawfull issue of her body it is my will that the above described Real Estate shall go to the child or children of my said niece, the heirs and assigns forever; In case my said niece should die without leaving lawfull heirs of her body, then and in such case it is my will that said Real Estate shall go to William C. Mitchell, Jr., for and during his natural life and on his decease, to his sons, Harry Mitchell and Frank Mitchell, theirs heirs, executors and assigns forever."

At the time of the execution of the will and when the testator died, the appellant was unmarried and without children. Conceiving that she took an estate in fee tail under the devise, to bar the entail, she conveyed the lands to another who in turn, reconveyed them to her.

Obviously, if the complainant took more than a life estate under the devise, it was by virtue of the *Rule in Shelley's Case,* 1 *Coke* 104. As announced the rule is that "when the ancestor by any gift or conveyance takes an estate in freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, 'the heirs' are words of limitation of the estate

and not words of purchase." Chancellor Kent has stated the rule accurately and comprehensively as follows:

"When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable character, to his heirs or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation entitles the ancestor to the whole estate." 4 *Kent Com.* 245; 24 *R. C. L.* 888; *Daniel v. Whartenby*, 17 *Wall.* 639, 21 *L.Ed.* 661. Many varying statements of the rule will be found in a comprehensive note in 29 *L. R. A. (N. S.)* 973.

The rule itself is not difficult to understand, however obscure its origin and object. The application of the rule is often perplexing. It is a rule of property, not of construction. *Jones v. Rees*, 6 *Pennewill*, 504, 69 *A.* 785, 16 *L. R. A. (N. S.)* 734. It has no place in the interpretation of a will, and is mute until the intention of the testator has first been ascertained.

The rule is concerned with heirs in fee or in tail of the life tenant, and there is always the preliminary question, depending on the rules of construction applicable generally to deeds and wills, whether, considering the language of the instrument as a whole, the limitation of the remainder was made to the heirs, as heirs; and, in searching for the intention of the testator, the precise matter to be discovered is not the persons who are directed to take the remainder, but the quality in which the testator intended them to take. *Guthrie's Appeal*, 37 *Pa.* 9.

The cardinal rule in construing a will is to ascertain from its language the intention of the testator; and that intention, when found, must prevail unless it runs counter to some positive rule of law. By this it is meant that if the testator has used technical words, such as "heirs" or "heirs of the body," having in law a fixed and definite meaning, or indeed equivalent words showing that the remainder is to go to those whom the law points out as the general or lineal heirs of the first taker, with nothing to explain or

qualify them, the rule in Shelley's Case must be applied; and in such case it matters not that the testator has declared that the ancestor shall have an estate for life only, or that the heirs shall take by purchase and not by descent, or that the rule shall not apply. The reason for this is that the law will not treat as an estate for life that which is essentially an estate of inheritance, nor will it permit one to take in the character of heir unless he takes also in like quality. But, in considering the applicability of the rule to the devise, the sense in which the testator has used technical words may be weighed; and if there are explanatory or qualifying expressions from which it appears that the words of art were not used with technical accuracy, but inartifically to denote particular persons, and that the import of the technical words is plainly contrary to the testator's intention, the rule has no application. *Daniel v. Whartenby, supra; Guthrie's Appeal, supra;* 24 *R. C. L.* 906. Where such is the case it is not that the intention of the testator overrides the rule; the case is not within the rule.

The rule in Shelley's Case is recognized in this State as a rule of the law of real property. *Jones v. Rees, supra.* The rule is always applied where the testator has used the words "heirs of the body" in a technical sense to denote persons who take by descent from the life tenant; and the presumption is that the words have been used in that sense. But the presumption is by no means absolute; and if it appears from other language in the will that the testator has used the words in a different sense, they will be taken as words of purchase and not of limitation. 2 *Underhill, Wills,* § 660.

In the devise before the court the testator has used the words "child or children," "lawfull issue of her body," and "lawfull heirs of her body"; and the problem to be solved is whether the testator used the last expression, "lawfull heirs of her body" in a technical sense as marking the remandermen, variously referred to, as descendants of the life tenant

taking through her in an indefinite line of inheritable succession, or merely as a *designatio personarum* constituting the remaindermen the root of a new succession.

The devise is in one sentence. The estate of the appellant is expressly declared to be "for and during her lifetime and no longer." These words are not without weight, and will not be wholly rejected unless required by the testator's intention. *Montgomery v. Montgomery, 3 Jones & Latouch* 61; *Daniel v. Whartenby, supra.* After the appellant's death, "if she leaves lawfull issue of her body," the property was devised "to the child or children" of the appellant in fee simple. The words "child" and "children" are primarily and presumptively words of purchase. Their technical and legal meaning is the immediate offspring and not an indefinite line of heirs. 2 *Underhill, Wills,* § 547; *Collins v. Williams,* 98 *Tenn.* 525, 41 *S. W.* 1056. In their natural import they are not words of limitation unless it is to comply with the intention of the testator, when they cannot take effect in any other way. *Buffar v. Bradford, 2 Atk.* 222. They are properly descriptive of a particular class or generation of issue, and point at individual acquisition, not at heritable succession. *Hayes, Estates Tail,* 35. Both in law and in common parlance they have only one meaning, although they may be shown by the context to have been improperly used in the sense of descendants. *Morgan v. Thomas, L. R. 9 Q. B. Div.* 643. It is in exceptional cases only, and where the intent to use the words in the sense of heirs clearly appears, that they have received an interpretation extending them beyond their precise primary meaning. 24 *R. C. L.* 904.

The word "issue," at least in a will, is not a technical term like "heirs of the body"; and is not *ex vi termini* within the rule in Shelley's Case. It is a word of doubtful import; and in a will it is either a word of purchase or a word of limitation as will best answer the testator's intention. *Cooper v. Collis, 4 T. R.* 294. In a legal sense it is primarily a word of limitation, but it may mean "descendants," or it

may mean "children"; and in common usage the sense of the word is "children." *Morgan v. Thomas, supra; Ralph v. Carrick, L. R.* 11 *Ch. D.* 882. Chancellor Kent characterized the word as one generally used by a testator as synonymous with "children." 4 *Kent Com.* 278; and in *Redfield on Wills (Part* 2,368*)* there are strong observations on the injustice in construing the word as synonymous with descendants of every degree. See 2 *Underhill, Wills,* § 675. The true interpretation of the word must be found from the connection in which it is used. Here, the word, in a provisional phrase merely, is in immediate contextual relation with an express limitation of the remainder to "child or children"; and it is abundantly clear so far that the testator used the word "issue" as synonymous with "child or children." At this point in the devise an estate in fee tail in the appellant was not created, for it is said to be an unbending rule that, when a fee simple is given to children after an estate for life in the parent, words following containing a limitation over on the death of his issue, do not raise an estate tail by implication. *Sheets' Appeal,* 52 *Pa.* 257.

The devise proceeds to declare, if the appellant "should die without leaving lawfull heirs of her body," that the property shall pass to a nephew for life and at his death to his sons by name in fee simple. For the first time the testator used technical words of fixed and definite meaning which, standing alone, would bring the devise within the grasp of the rule. The paramount concern, however, is with the sense in which the technical words were used. It is carefully to be noted that the limitation of the remainder was not to the heirs of the body of the appellant, but expressly to his child or children in fee simple. The rule in Shelley's Case is never applied to a devise to a parent with remainder to his children, if the word "children" is used in its ordinary sense. 2 *Underhill, Wills,* §§ 651, 662, note on *Rule in Shelley's Case,* 29 *L. R. A. (N. S.)* 1123; and while, undoubtedly, "children" may be used in the comprehensive sense of "heirs" or "heirs of the body," the intention to use

as a word of limitation, contrary to its natural import, must be made clear by the words of the testator himself. Conjecture, doubt, or even an equilibrium of intention will not suffice. "Children," in law, is as certainly a word of purchase primarily as "heirs of the body" are words of limitation; and if it is difficult to degrade words of inheritance into words of mere personal description, it is, at the least, equally difficult to exalt a word of purchase to the height of a word of limitation. *Guthrie's Appeal, supra.* The author of the note on Shelley's Case in 29 *L. R. A. (N. S.) supra,* after stating the general rule to be that where there is a gift to a parent, remainder to his children, remainder over on default of issue of the parent, the limitation over will not enlarge the estate of the parent, on page 1119 puts this case: a limitation to A for life, remainder to his children, remainder to B on failure of the heirs of A. "Here," says the writer, "is a word in the limitation over having a definite technical meaning," and the question is posed, "did the giver intend that upon the death of the children of A, or in default of such children, the property should go to the other heirs of A before reaching B? or did he use the word 'heirs' in the limitation over as synonymous with children?" It was answered that "in the absence of any other explanatory words, it would probably be held that even a limitation over on the failure of 'heirs' would not be enough to convert 'children' into a word of limitation."

Again, the devise over on failure of heirs of the body of the appellant was to a nephew for life. At the common law the phrase "dying without issue," or any words of the same meaning, presumptively signifies an indefinite or general failure of issue in the absence of a controlling text; and by an indefinite failure of issue is a failure of issue whenever it shall happen even in the remotest generation, without any fixed or certain time within which, or at the end of which it must happen. 2 *Underhill, Wills,* § 844. But even at the common law a devise over on the failure of issue may be shown by the context to refer to a definite failure

of issue, and in such case the estate created will be a fee simple or a life estate according to the form of the limitation to the first devisee, without reference to the devise over; and the tendency of the courts today is to adopt upon slight indication of intention a construction which refers the words importing a failure of issue to the death of the first taker. 1 *Tiffany, Real Property,* 65. The language of the devise under consideration clearly suggests that an indefinite failure of issue was not contemplated, for it is extremely doubtful that the testator could have thought that the object of his bounty, his nephew, would be alive at the time of the total extinction of the appellant's posterity. *Taylor v. Taylor,* 63 *Pa.* 481, 3 *Am. Rep.* 565; *Eichelberger v. Barnitz,* 9 *Watts (Pa.)* 447, 450. Moreover, it is well settled that words importing a failure of issue following a devise to "children" in fee or in tail refer to the objects of the prior devise and not to issue at large. 2 *Jarman, Wills, (4th Am. Ed.)* 271.

It is true that at the time of the execution of the will and when it took effect, the appellant was unmarried and without children. But she was in being, and could marry and leave children. The gift was to her for life, with an executory gift to her children. The fact, of itself, is not sufficient to expand by construction the primary meaning of the word "children." See last resolution in *Wild's Case,* 3 *Coke,* 17; *Cote v. Von Bonnhorst,* 41 *Pa.* 243; *Taylor v. Taylor, supra; Underhill, Wills,* §§ 580, 583; 2 *Powell on Devises,* 495n.

There are clear evidences that the will was not the product of a lawyer, and that the terms and expressions were not used with technical accuracy. If one learned in the law had thought to create by implication an estate in fee tail in the appellant, it is not likely that a direct gift in remainder in fee simple would have been made to her children, or that, in immediate connection and in manifest confusion, words of art of a fixed and definite meaning would have been interwoven with words of purchase.

The authorities are many and conflicting. They cannot be reconciled; nor can any controlling principle be deduced from them. *Daniel v. Whartenby, supra.* The cases in this State are not of great assistance, nor, save in one instance, much in point.

In *Roach v. Martin,* 1 *Har.* 548, 28 *Am. Dec.* 746, the devise was to E. F. "And her heirs forever except she should die without an heir born of her own body," then over. In *Doe ex dem. McColley v. Lampleugh,* 3 *Houst.* 461, the devise was to a grandson and his heirs if any he should have, but if he should die without any heirs, over to another grandson. In the *Matter of Reeves,* 10 *Del. Ch.* 324, 92 *A.* 246, *Id.,* 10 *Del. Ch.* 483, 94 *A.* 511, the devise was to the testator's wife during her life or widowhood, then to William Reeves, to him and the lawful heirs of his body forever, but if he should die and leave no lawful issue of his body, over to a nephew. In *Caulk v. Caulk,* 3 *Pennewill,* 528, 52 *A.* 340, the devise was of real estate to each of three sons of the testator their heirs and assigns forever; and by a subsequent item it was provided that if either of the sons should die leaving no child or children, the survivor or survivors should inherit the deceased one's portion and portions, to them or either of them, their heirs and assigns forever. In *Griffith v. Derringer,* 5 *Har.* 284, the gift was to a son for life, and after his death to the oldest male heirs of his body lawfully begotten. These cases are not analogous.

*Jamison v. McWhorter,* 7 *Houst.* 242, 31 *A.* 517, is most in point. There the devise was to a son for life, and in case of his death leaving a child or children *or the issue of such,* remainder to such child or children *or the issue of such.* This was followed by a direction that in case of the death of any of the named testator's sons, without leaving child or children, *or the issue of such,* the share of the son so dying should go to the survivors *or the issue of such* as might be deceased. Houston, Judge, speaking for the majority of the Court of Errors and Appeals [see *Caulk's Lessee v. Caulk,*

3 *Pennewill*, 528, 534, 52 *A*. 340, 342, and *Mathieson v. Craven, (D. C.)* 228 *F*. 345, 367], held that the words dying "without leaving any child or children or the issue of such," clearly imported an intention on the part of the testator to use the words child or children as synonymous with the words issue or descendants, and that they were words of limitation and not of purchase. Chief Justice Comegys, dissenting, was of opinion that the rule in Shelley's Case had no application to the devise. There are, as is apparent, similarities in the language of the devise under consideration. But there are also marked dissimilarities, and it is unnecessary to express any further opinion with respect to the cited case.

The *Jamison* case was soon followed by the case of *Gross v. Sheeler*, 7 *Houst*. 280, 31 *A*. 812. In that case Chief Justice Comegys in speaking for the Superior Court of the rule in Shelley's Case, characterized it as a rule which has done more to produce litigation, and when sustained, to thwart the actual purpose of the testator than all the other arbitrary rules combined; and that while it remains a rule of law and of property the court must abide by it. But where, in the construction of a will, the rule is not clearly and indisputably applicable, no countenance should be given to it. In *Jones v. Reese, supra,* this court quoted the language of Chief Justice Comegys with approval, and proceeded to say that the arbitrary feature of the rule had induced courts of law and equity to construe it most strictly, and when practicable, to take cases out of its operation.

The appellant stresses the effect of the words "lawfull heirs of her body." The argument is, of course, that the words "child or children" and the term "lawfull issue of her body" are in no sense explanatory of the technical words, nor do they qualify their meaning or leaven their effect; so that the will must be construed as limiting the remainder to the direct descendants of the life tenant in an indefinite line of inheritable succession. This contention is not passed over as an idle one. The construction advocated is a possible

construction, but it is not so certain and indisputable as to demand the application of the rule. On the one hand we are confronted with an express devise of the remainder to children in fee simple. On the other hand is the use of words presumptively of limitation, but in a conditional phrase. It is, at the least, as reasonable to suppose that the testator used the term "lawfull heirs of her body" in the sense of "children," as that he used "children" as synonymous with "heirs of the body." It is entirely practicable to exclude the devise from the operation of the rule. Looking at the language straight forwardly, it may reasonably be said that the words "lawfull heirs of her body" were not used with technical precision expressive of the nature and extent of the estate devised to the appellant, but inartificially as pointing out her children, if she should leave children, as the particular persons who were to take at her death, not through her, but from the testator as "the springhead of a new and independent stream of descents."

The appellant took only a life estate under the devise. The court below was right in so holding. The decree is affirmed.

RICHARDS, and TERRY, JJ., concur.

RODNEY, Judge (dissenting): I regret that I cannot concur in the construction accorded to the will of the decedent by the majority of this Court. This dissent is based upon two grounds:

1. I am unable to distinguish this case upon principle from *Jamison v. McWhorter*, 7 *Houst.* (12 *Del.*) 242, 31 *A.* 517. The facts of the present case, however, make it a much stronger case for the application of the Rule in Shelley's case than that cited.

2. I am of the opinion that an examination of the whole will of the decedent compels the application of the Rule of Shelley's Case. I readily concede that the Rule should be construed most strictly, and only applied when

the context requires it. Being a rule of law, however, I feel that it must be applied when a testamentary context comes clearly within its terms. In this case the testator gave to his niece a property "for and during her lifetime and no longer." The will then provides:

"And after the death of my niece if she leaves lawfull issue of her body it is my will that the above described real estate shall go to the child or children of my said niece their heirs or assigns forever. In case my said niece should die without leaving lawfull heirs of her body then and in such case" the property goes over to a nephew and others.

The record discloses that the niece, still living at upwards of eighty years of age, has not now and never has had any child or children.

The question for solution is whether the testator referred to a definite or indefinite inheritable succession, or as otherwise expressed, whether the testator intended that those taking after the death of the niece should take by and through her as a continuing line or whether, at her death, the then takers would take directly from the testator as a root of a new line of succession.

The will uses the words "lawfull issue of her body," "child or children" and "lawfull heirs of her body." I readily concede that the words "child or children" are presumptively words of purchase and not words of limitation, and when used in their natural sense refer to the immediate issue. This construction, however, is not always an absolute one and, according to the intention of the testator, the words "child or children" may be words of limitation. It seems to me that this must be especially true when the words are used in connection with "lawfull heirs of the body" and there were no children at the date of the will or at the death of the testator, and so the words "child or children" could not be *descriptio personarum*."

If the will had stopped after saying that if the niece should leave "lawfull issue of her body" that the property should go "to the child or children of my said niece, their

heirs and assigns forever," I would agree that the words "child or children" should be constructed as used in their ordinary sense of importing issue of the first generation and would be words of purchase and not words of limitation. In such case the words "child or children" would probably qualify and limit the flexible words "lawfull issue of her body" and the niece would take but a life estate. Where, however, the quoted words are followed by other words, and the ultimate devise to the nephew is limited to take effect only "in case my said niece shall die without leaving lawfull heirs of her body," I think that a different construction must apply. For the suggested construction to be applicable the words "lawfull heirs of her body" must be circumscribed and limited and construed as synonymous with "child or children." The words "child or children" are, of course, included in the terms "heirs of the body," but the latter term is much more comprehensive and the two terms are not, in general synonymous. If the niece had left a grand-child and no child or children to survive her, the devise over to the nephew would have been defeated according to my interpretation of the words "lawfull heirs of the body." I think there would have been an estate tail in the niece which could have been barred by her and converted into a fee simple estate but which, if not barred, would have vested the estate in the grand-child. This would not have been the effect if "lawfull heirs of the body" was used as a synonym for "child or children." In such case, if the niece had left a grandchild, but no child or children, then in default of child or children the estate would go over to the nephew and the grandchild would have taken nothing, notwithstanding the devise over was only in default of "lawful heirs of the body."

The term "lawfull heirs of her body" is a technical term which has a definite meaning and, unless clearly used in a different sense, means that the words are words of limitation and not of purchase, and import an indefinite failure of issue and not the failure to leave child or children.

When the testator has provided that the property should go in the first instance to the niece for life, and "if she leave lawfull issue" then to "her child or children their heirs or assigns," and follows this with a provision that in case the niece "should die without leaving lawfull heirs of her body" then over to a nephew, then and in such case it seems to me that the testator clearly intended that the property should not pass to the nephew until the line of the niece's descendants had been completely exhausted.

Inclining to the belief that the intention of the testator was that those who were to take the property after the death of the niece should take it by and through her as an indefinite line of succession, and not at the death of the niece take it from the testator as a new line of succession, so I must hold the interest an estate tail in the first taker which has become by virtue of the deeds a fee simple estate.

I arrive at the conclusion here reached with diffidence, and with a full appreciation of the reasonableness of the majority opinion.

SPEAKMAN, J., concurs.