SECURITY TRUST COMPANY, a corporation of the State of Delaware, and SAMUEL COOLING, surviving executors under the Will of Severson B. Cooling (Sr.), deceased,

*vs.*

SAMUEL COOLING and SECURITY TRUST COMPANY, a corporation of the State of Delaware, surviving executors under the Will of Agnes S. Cooling, deceased; SAMUEL COOLING; SECURITY TRUST COMPANY, a corporation of the State of Delaware, executor under the will of Severson B. Cooling, Jr.; SECURITY TRUST COMPANY, a corporation of the State of Delaware, trustee under Items Sixth, Seventh, Eighth and Ninth, respectively, of the will of Severson B. Cooling (Sr.), deceased; SEVERSON B. COOLING, 3d, a minor; ALICE BALL COOLING, a minor; MARJORIE ANN COOLING, a minor; and EMILY R. COOLING.

*New Castle, May 31, 1945.*

*George C. Hering, Jr.,* of the firm of Hering, Morris, James & Hitchens, for Security Trust Company and Samuel Cooling, surviving executors of Severson B. Cooling, Sr., deceased.

*Warren Roberts,* for Security Trust Company, Trustee under the Ninth Item of the Will of Severson B. Cooling, Sr., deceased.

*Charles F. Richards,* of the firm of Richards, Layton & Finger, for Security Trust Company, Trustee under the Sixth, Seventh and Eighth Items of the will of Severson B. Cooling, Sr., deceased.

*Clair J. Killoran,* for Samuel Cooling.

*W. Thomas Knowles,* for Emily R. Cooling, Guardian *ad litem* for Severson B. Cooling, 3d, and Alice Ball Cooling, minors.

*Benjamin N. Brown,* for Helen R. Cooling, Guardian *ad litem* for Marjorie Ann Cooling, minor.

HARRINGTON, Chancellor: Severson B. Cooling, Sr., a resident of the City of Wilmington, died May 24th, 1931, leaving both personal and real property of considerable value. Prior to his death, he had executed a last will and testament, which was subsequently proved as such before the Register of Wills, for New Castle County, and letters testamentary on his estate were duly issued to Samuel Cooling, Severson B. Cooling, Jr. and Security Trust Company, the executors named in his will.

The complainants, the surviving executors of Severson B. Cooling, Sr., seek instructions with respect to the settlement of his estate. Severson B. Cooling, Jr., the other executor, survived the testator, but died May 31st, 1940.

### The will of Severson B. Cooling, Sr., in part, provides:

"Item Second: I give and bequeath unto my wife, Agnes Cooling, all of my household furniture and furnishings, silverware and linens in our home at No. 2304 West Seventeenth Street, in the City of Wilmington, Delaware, and all automobiles, and the accessories and equipment thereto belonging, owned by me at the time of my death.

"Item Third: I do give and bequeath unto my wife, Agnes Cooling, the sum of Ten thousand dollars.

"Item Fourth: I do give and bequeath unto my son, Samuel Cooling, the sum of Ten thousand dollars.

"Item Fifth: I do give and bequeath unto my son, Severson B. Cooling, Jr., the sum of Ten thousand dollars.

"Item Sixth: I do give and bequeath unto the Security Trust Company, a corporation under the Laws of the State of Delaware, its Successors and Assigns, the sum of Three Hundred thousand dollars, in trust, nevertheless, to invest and reinvest the same, and to pay over the net income therefrom unto my wife, Agnes Cooling, quarter-annually, for and during the whole term of her life, beginning said payments three months after the date of my death; and from and after the death of my said wife, Agnes Cooling, in further trust to pay one-half of said net income, quarter-annually, unto my son, Samuel Cooling, for and during the whole term of his life, and to pay over the remaining one-half of said net income, quarter annually, unto my son, Severson B. Cooling, Jr., for and during the whole term of his life. And upon and after the death of either and both of my said sons, leaving issue, in the further trust to pay over the one-half of said net income, in equal shares, to the issue of each of my said sons so dying, for and during their respective lives, and upon and after the death of such issue, respectively, to pay over the said principal then remaining in the hands of my said Trustee, and the income then accumulated thereon, to the issue of any child or children of my respective sons, in equal shares, freed and discharged from any trusts. If any such issue of any child or children of my respective sons should die without leaving issue living, then to pay over his, her or their respective share of said principal, and accrued income, to the issue of the survivor or survivors of said issue, in equal shares, freed and discharged from any trusts. If either of my said sons should die during the continuance of the trusts herein provided, without leaving issue living, then in further trust to hold said principal and pay said net income to the survivor of said sons and his issue, and to pay said net income and distribute said principal to his and their issue, as hereinabove provided.

"Item Seventh: I do give and bequeath unto the said Security

Trust Company, its Successors and Assigns, the sum of Twenty-five Thousand Dollars, in trust, nevertheless, to invest and reinvest the same, and pay over the net income therefrom unto my grand-daughter, Marjorie Ann Cooling, daughter of my son, Samuel Cooling, for and during the whole term of her life; and from and after the death of my said grand-daughter, Marjorie Ann Cooling, to pay over the said net income to her issue, in equal shares, until they respectively arrive at the age of twenty-one years, and then to pay over to him, her or them, an equal share of the principal then remaining in the hands of my Trustee, and an equal share of the then accrued income thereon, freed and discharged from any trusts.

"If my said grand-daughter should die without issue living, then to hold said principal in further trust, and pay said income thereon to my grand-son, Severson B. Cooling, 3d, for and during the whole term of his life; and from and after the death of my grand-son, Severson B. Cooling, 3d, to pay over said income unto his issue, in equal shares, until they respectively arrive at the age of twenty-one years, and then to pay over to him, her or them an equal share of the principal and the then accrued income thereon, freed and discharged from any trusts.

"Item Eighth: I do give and bequeath unto the said Security Trust Company, its Successors and Assigns, the sum of Twenty-five thousand dollars, in trust, nevertheless, to invest and reinvest the same and pay over the net income derived therefrom unto my grandson, Severson B. Cooling, 3d, son of my son, Severson B. Cooling, Jr., for and during the whole term of his life; and from and after the death of my said grandson, Severson B. Cooling, 3d, to pay over the said net income to his issue, in equal shares, until they respectively arrive at the age of twenty-one years, and then to pay over to him, her or them, an equal share of the principal sum then remaining in the hands of my Trustee, and an equal share of the then accrued income thereon, freed and discharged from any trusts.

"If my said grand-son should die without leaving issue living, then to hold said principal in further trust, and pay said income thereon to my grand-daughter, Marjorie Ann Cooling, for and during the whole term of her life; and from and after the death of my said grand-daughter, Marjorie Ann Cooling, to pay over said income unto her issue, in equal shares, until they respectively arrive at the age of twenty-one years, and then to pay over to him, her or them an equal share of the principal and the then accrued income thereon, freed and discharged from any trusts.

"Item Ninth: All of the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, and to which I shall

in any manner be entitled, I do give, devise and bequeath unto the said Security Trust Company, its successors and Assigns, in trust nevertheless, to invest and reinvest said personal estate, and to rent, manage and sell said real estate, and pay over one-half of the net income derived therefrom, quarter-annually, unto my son, Samuel Cooling, for and during the whole term of his life, and to pay over the remaining one-half of said net income unto my son, Severson B. Cooling, Jr., for and during the whole term of his life; and from and after the death of either and both of my said sons, leaving issue living, in further trust to pay over one-half of said net income, in equal shares, to the issue of each of my sons so dying, for and during their respective lives; and upon and after the death of such issue, respectively, to pay over an equal share of the one-half of said principal then remaining in the hands of my said Trustee, and one-half of the then accumulated income thereon, to the issue of any child or children of my respective sons, in equal shares, freed and discharged from any trusts. If any such issue of any child or children of my respective sons should die without leaving issue living, then to pay over his, her or their respective share of said principal, and any interests then accrued thereon, to the issue of the survivor or survivors of them, freed and discharged from any trusts. If either of my said sons should die during the continuance of the trusts herein provided, without leaving issue living, then in further trust to hold said principal and pay said net income to the survivor of my said sons, and his issue, and to pay said net income and distribute said principal to his and their issue, as hereinabove provided.

    *   *   *   *   *   *

"Item Eleventh: I hereby authorize and empower my said Trustee to sell, either at public or private sale, for such price as it shall deem sufficient, any and all real estate of which I shall die seized or possessed, or to which I shall in any manner be entitled, and convey the same to the purchaser or purchasers for such estate or estates as I had and held the same, without liability on the part of said purchaser or purchasers for the application, misapplication or non-application of the purchase money. Any moneys received from the sale of such real estate to be held by said Trustee under and subject to the Trusts provided for the rest, residue and remainder of said estate, in Section Ninth of this my Will."

Severson B. Cooling, Sr., left to survive him, as his heirs at law and next of kin, his widow, Agnes S. Cooling, and two sons, the said Samuel Cooling and Severson B. Cooling, Jr. Severson B. Cooling, 3d, son of Severson B. Cooling, Jr., and Marjorie Ann Cooling, daughter of Samuel

Cooling, also survived the testator. Alice Ball Cooling, a daughter of Severson B. Cooling, Jr., was born December 31st, 1931, and, therefore, subsequent to the death of her grandfather.

Agnes S. Cooling, the widow of Severson B. Cooling, Sr., died March 12th, 1938, having first made her last will and testament, which was also subsequently proved as such before the Register of Wills, for New Castle County, and letters testamentary on her estate were likewise granted to the said Security Trust Company, Samuel Cooling and Severson B. Cooling, Jr., the executors named in her will. She left to survive her, as her heirs at law and next of kin, the said Samuel Cooling and Severson B. Cooling, Jr. Severson B. Cooling, 3d, and Alice Ball Cooling, minor children of Severson B. Cooling, Jr., and Marjorie Ann Cooling, the minor daughter of Samuel Cooling also survived her.

Severson B. Cooling, Jr., died May 31st, 1940, having also first made his last will and testament, which was subsequently proved as such before the Register of Wills, for New Castle County, and letters testamentary on his estate were duly granted to the Security Trust Company, the executor named in his will. His estate is still in the process of administration, but his will gave all of his property to his wife, Emily R. Cooling, absolutely. Severson B. Cooling, Jr., left to survive him, as his heirs at law and next of kin, his widow, the said Emily R. Cooling, and two minor children, the said Severson B. Cooling, 3d, and Alice Ball Cooling.

After the death of Severson B. Cooling, Sr., his executors proceeded with the administration of his estate, and on October 20th, 1939, passed their first account before the Register of Wills, for New Castle County. On June 20th, 1941, a second account was passed on his estate by Samuel Cooling and Security Trust Company, the surviving executors. It appears from a consolidated analysis of these

accounts, attached to the bill, that the appraised value of the personal property of the deceased, received by the complainants as executors, was $388,812.23. The net gain on certain securities sold, together with the subsequent receipt of other assets, including the value of securities received from the dissolution of the Newark Securities Company, increased that figure to $432,778.53; but the payment of taxes, debts and expenses, and the payment of legacies, either in full or on account, reduced that amount to $276,-201.79. The payments made on account of the various pecuniary legacies amounted to $15,137, leaving an unpaid balance of $364,863. Those payments included the $10,000 legacy to Severson B. Cooling, Jr., during his lifetime, pursuant to an agreement, in writing, signed by Agnes S. Cooling and Samuel Cooling, agreeing to indemnify the corporate trustee against any loss by reason thereof. The remaining payments made were on account of the legacies bequeathed by Items Sixth, Seventh and Eighth of the testator's will. The income received by the complainants as executors, from the personal property belonging to the decedent's estate, was $147,141.53; the payments made therefrom by the complainants include $92,101.32 to persons entitled to the income under the various trust provisions of the will, leaving a balance in hand of $13,126.70. At the time of Severson B. Cooling's death, his real estate was valued at $52,170. Under the residuary clause of his will, it was devised to the Security Trust Company, in trust, with a power of sale. One parcel was subsequently sold at a figure $100 under its appraised value. The net income received from the real estate was $14,852.08. It, therefore, appears that as of June 20th, 1941, the complainants, as executors, had in hand personal property of the apparent value of $276,201.79, the balance of the net income received therefrom amounting to $13,126.70, and the net balance of the income received from real estate, amounting to $14,852.09; this makes a total figure of $304,180.58. The balance of the real estate was also originally valued

at $52,070. If this property and the income therefrom is applicable to the payment of legacies, the gross estate, under the jurisdiction of the complainants, would appear to be $356,250.58.

The questions to be determined apparently are:

(1) Whether the life interests of the children of the testator's sons in the net income arising from the trusts created by the Sixth and Ninth Items of the will are valid, and (2) whether the proceeds of the sale of the testator's real estate are applicable to the bequests in the Third, Fourth, Fifth, Sixth, Seventh and Eighth Items of the will; if so, whether they abate equally.

Both the Sixth and Ninth Items create several successive equitable life interests in funds bequeathed in trust. The Sixth Item gives life interests in the income from $300,000: (1) To Agnes S. Cooling, the testator's widow; (2) on her death, to his two sons, Samuel Cooling and Severson B. Cooling, Jr., in equal shares, and (3) upon "the death of either or both" of the testator's sons "leaving issue," the trustee is directed to pay "the one-half of said net income in equal shares to the issue of each" son "so dying for and during their respective lives." Upon the death of any such issue respectively, the trustee is also directed to pay the corpus of the fund and "the income then accumulated thereon to the issue of any child or children of my (his) respective sons, in equal shares, freed and discharged from any trusts."

Cross-remainders are also provided for if the issue of any child or children of the testator's respective sons should die without living issue. The Ninth Item also disposes of the residue and remainder of the testator's real and personal property in trust. It gives no life rights to the testator's widow, but in all other respects the disposition of that part of his property for the lives of the various persons and in remainder is precisely the same as in the Sixth Item of

his will. All parties concede that the final absolute disposition of the corpus of the trust under these items of the will and of any accumulated income thereon violates the rule against perpetuities, and is void. *Taylor v. Crosson*, 11 *Del. Ch.* 145, 98 *A.* 375; *Equitable Trust Co. v. Snader, et al.*, 17 *Del. Ch.* 203, 151 *A.* 712; *Wilmington Trust Co. v. Wilmington Trust Co.*, 21 *Del.Ch.* 102, 180 *A.* 597; *Id.*, 21 *Del. Ch.* 188, 186 *A.* 903; *Wilmington Trust Co. v. Wilmington Trust Co.*, 25 *Del. Ch.* 121, 15 *A.* 2d 153, *affirmed on appeal*, 26 *Del. Ch.* 397, 24 *A.* 2d 309, 139 *A. L. R.* 1117; *Gray on Perpetuities*, (*4th Ed.*) § 201. The application of that rule "is determined by the possibilities of the case, not by its probabilities, nor by the actual event" (*Taylor v. Crosson, supra* [11 *Del. Ch.* 145, 98 *A.*, 377]; it is not enough that the contingency may happen within the time limited by the rule. *McGill v. Trust Co. of New Jersey*, 94 *N. J. Eq.* 657, 121 *A.* 760. In other words "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Taylor v. Crosson* and *Equitable Trust Company v. Snader, et al., supra,* quoting from *Gray on Perpetuities* (*3rd Ed.*) § 201. At the earliest time, these bequests could only vest absolutely in possible great grandchildren of the testator. It is not denied that if the various equitable life interests of the testator's grandchildren stood alone, they would be valid; but Samuel Cooling claims that as the ultimate disposition of the funds, clear of the trusts, is invalid, the prior life interests are likewise invalid, and that the testator died intestate as to all of the bequests in both the Sixth and Ninth Items of his will. His theory is that the various life provisions for grandchildren are so inseparably connected with the testator's general scheme to tie up his property for the ultimate benefit of his remote descendants that the good cannot be separated from the bad. He stresses the contingent nature of the various gifts, the absence of spendthrift or other provisions, clearly indicating a specific intent to benefit the grandchildren, and the provisions for cross-remainders, and concludes that as some provisions are

bad, the testator's intent would be better preserved by striking down all of the bequests under these items of the will. I am unable to agree with that contention. The reasoning in the *Snader* case and in the *Wilmington Trust Company* cases is conclusive on this question. There may be cases where valid and invalid provisions are so inseparably connected that both must fall if one is void. (*Wilmington Trust Co. v. Wilmington Trust Co.*, 21 *Del. Ch.* 102, 180 *A.* 597; 2 *Simes Fut. Int.*, § 529; 75 *A. L. R.* 124, 125) ; but that is not true of mere consecutive and successive interests, though contingent, when subsequent remote interests violate the rule against perpetuities. *Equitable Trust Co. v. Snader, supra; Wilmington Trust Company Cases, supra; McGill v. Trust Co. of New Jersey, supra.* As a general rule, in the absence of something in the will from which a contrary intent may be reasonably inferred, a valid equitable interest for life will take effect as if a void remainder had been stricken out. *Id; 2 Simes Fut. Int.*, § 529; *Gray on Perp.*, § 249a. It is not enough to say that "we do not know whether the testator would have permitted the valid provision to stand if he had known that one clause was void." 2 *Simes Fut. Int.*, § 529. To hold otherwise would usually require indulging in little more than speculation with respect to the testator's intent. *Wilmington Trust Co. v. Wilmington Trust Co.*, 21 *Del. Ch.* 102, 180 *A.* 597.

The rule adopted in *Equitable Trust Company v. Foulke, et al., ante p.* 238, 40 *A.* 2d 713, is not applicable.

In *Wilmington Trust Company v. Wilmington Trust Company*, 21 *Del. Ch.* 102, 180 *A.* 597, 603, the Chancellor approved Professor Gray's statement in his work on *Perpetuities* § 249a:

" 'If anything is now well settled in the law,' * * * 'it is that a life estate, good in itself, is not destroyed by the remainder over being bad for remoteness or any other reason.' "

Professor Gray also points out:

"Even when the life estates are to unborn persons, they are good."

See also *Gray on Perp.*, (*3rd Ed.*) § 322; 48 *C.J.* 969.

There is nothing in Severson B. Cooling's will to indicate that he had more regard for the unborn issue of his grandchildren than he had for his wife, his two sons and their children. All are given interests, but they are in no sense dependent rights. Moreover, in the *Snader* case the court held that the life interests were merely intended to safeguard the remainders. This seems to rebut the contention that the lack of spendthrift provisions for the benefit of the grandchildren is indicative of the testator's real intent.

Samuel Cooling also points out that as the remainders after the various life interests are void, they necessarily pass under the intestate laws to the testator's widow and two sons absolutely; and on the death of Agnes S. Cooling her one-third part thereof also passed, under her will, to Severson B. Cooling, Jr., and Samuel Cooling, absolutely. But even if the equitable life interests of Severson B. Cooling, Jr., and Samuel Cooling merged with their ultimate absolute legal interests (but see 1 *Simes Fut. Int.*, § 102) that did not destroy the contingent equitable life interests of the testator's grandchildren under either the Sixth or the Ninth Items of the will.

Conceding that ordinarily the validity of a legal freehold contingent remainder in real estate depends on the continued existence of a preceding freehold estate until the remainder vests (*Fearne, Conting. Rem.*, 308, 316), that rule does not apply to equitable contingent remainders in personal property; or even to equitable contingent remainders in real estate devised in trust. *Fearne, Conting. Rem.*, 303; 1 *Simes Fut. Int.*, § 105.

In such cases, the question of seisin is not involved

and the historical reasons do not apply. 1 *Simes Fut. Int.*, § 105.

The Ninth Item of the testator's will gives and devises "all of the rest, residue and remainder of my (his) estate, real, personal and mixed" to Security Trust Company, in trust, "to invest and reinvest said personal estate and to rent, manage and sell said real estate, and pay over one-half of the net income derived therefrom" unto each of his sons for and during their respective lives; "and from and after the death of either and both" of said sons, leaving issue living, in further trust "to pay over one-half of said net income, in equal shares, to the issue of such of my sons so dying, for and during their respective lives; and upon and after the death of such issue, respectively, to pay over an equal share of the one-half of said principal then remaining in the hands of my (his) said Trustee, and one-half of the then accumulated income thereon, to the issue of any child or children of my (his) respective sons, in equal shares, freed and discharged from any trusts."

By the Eleventh Item of his will, the testator also expressly authorizes and empowers his trustee to sell "any and all real estate of which I shall die seized or possessed" at either public or private sale and to give deeds therefor.

The gifts in the Ninth Item are to the testator's sons for life; remainder to the sons' issue for their lives; remainder "to the issue of any child or children" of the testator's sons "freed and discharged from any trusts."

Samuel Cooling claims that the *Rule in Shelley's Case* is applicable, and that the testator's sons acquired an equitable estate in fee tail in the real estate devised in trust by the Ninth Item of the will, which by statute can be converted into an immediate equitable fee simple estate. See *Jamison v. McWhorter*, 7 *Houst.* 242, 31 *A*. 517;[2] *Farrell*

---

[2] The majority opinion was delivered by Judge Houston, though the report of the case indicates otherwise. See *Caulk's Lessee v. Caulk*, 3 *Pennewill* 528, 52 *A*. 340.

*v. Faries,* 25 *Del. Ch.* 227, 17 *A.* 2*d* 17; *s.c. on appeal,* 25 *Del. Ch.* 404, 22 *A.* 2*d* 380.

Emily R. Cooling, guardian *ad litem,* does not consider that question. She does claim, however, that in order for the *Rule in Shelley's Case* to apply, the particular estate in the ancestors and the estate in remainder in their heirs must be of the same nature and quality—both legal or both equitable (1 *Simes Fut. Int.,* § 125; 47 *Amer. Jur.* 809; *Restat. Property Fut. Int.,* § 312, *p.* 1755) ; and that the ultimate absolute legal remainder given to the issue of the sons' child or children is a mere dry trust which does not require any further action by the trustee in order for it to take effect. *Cowan v. Classen,* 156 *Md.* 428, 144 *A.* 367; *Restat. Prop. Fut. Int.,* § 312, *pp.* 1755-1757; *Restat. Trusts,* § 69, *Comment* (*a*) ; 1 *Simes Fut. Int.,* § 216; see also *Bower v. Prince, ante p.* 215, 40 *A.* 2*d* 174. She, therefore, concludes that one estate is equitable and the other legal and that the rule relied on cannot apply.

But the immediate question seems to relate largely to the rights of the testator's grandchildren in his real estate as such, and even if Samuel Cooling and Severson B. Cooling, Jr., took an equitable estate in fee tail therein, the intermediate life estates of their children were not destroyed by a merger of their ancestors' rights. 1 *Simes Fut.Int.,* § 128; 47 *Am.Jur.* 808; *Farrell v. Faries,* 25 *Del.Ch.* 227, 17 *A.2d* 17. The testator's sons acquired certain immediate equitable rights, but in any aspect of the case they did not take an immediate possessory fee tail title. *Id.* Furthermore, any rights of devisees in the real estate are subject to the trustee's express power to sell and convert it into personal property which was contemplated by the Ninth Item of the will and expressly authorized in more detail in the Eleventh Item; and some real estate has been sold accordingly.

The Eleventh Item also provides that "any moneys re-

ceived from the sale of * * * real estate to be held by my said trustee under and subject to the trusts provided for the rest, residue and remainder of said estate in Section Ninth of this my will." It is contended that this provision makes the fund a specific gift, applicable only to the trusts created by the Ninth Item of the will. I am unable to agree with that contention.

Ordinarily, general pecuniary legacies are payable from personal property (*Getchell v. Rust,* 8 *Del.Ch.* 284, 68 *A.* 404; *Morgan v. Morgan,* 14 *Del.Ch.* 171, 123 *A.* 185; *Thompson on Wills,* 589) ; and when there are insufficient funds to pay them in full, they must abate proportionately. *Provident Trust Co. v. Graff, et al.,* 18 *Del.Ch.* 255, 157 *A.* 920; 4 *Page on Wills,* (*L.T.Ed.*) 328. Specific legacies are, however, payable before general legacies. *Cooper v. Bishop,* 19 *Del.Ch.* 98, 163 *A.* 644; *Cooch's Ex'r. v. Cooch's Adm'r.,* 5 *Houst.* 540, 1 *Am.St.Rep.* 161. Whether real estate is charged with the payment of legacies is a question of intent that must be determined from the provisions of the will. *Morgan v. Morgan, supra; Security Trust Co. v. Bulcroft,* 21 *Del.Ch.* 242, 187 *A.* 13. When no contrary intent appears, it seems to be a settled rule of construction in this State that when real estate is carried in a general residuary gift, it is chargeable with pecuniary legacies to the extent made necessary by the insufficiency of the personal estate to pay them in full. *Id.* That principle is controlling. Moreover, the mere designation or enumeration of particular property in the residuary clause of a will does not make the bequest or devise of such property specific rather than general. *Bristol v. Stump,* 136 *Md.* 236, 110 *A.* 470; 128 *A.L.R.* 822, 835.

In order for a gift to be specific something from which that intent may be inferred must appear; and no such intent can be gathered from the will of Severson B. Cooling, Sr. No real estate is specifically devised to anyone, and the reasonable inference is that the testator merely intended to provide for its conversion into money, to be held and used as

other general residuary funds. No shortage of assets was contemplated and it is hardly reasonable to assume that he intended to change the usual rules relating to the abatement of legacies should there be insufficient funds to pay them in full. 4 *Page on Wills, (L.T.Ed.)* 318. Applying these principles, all of the legatees in items third through eighth are entitled to participate in the general residuary fund. Different principles are involved in *Cooper v. Bishop, supra.*

Nor is the payment of the $300,000 legacy, given by the Sixth Item, preferred over any of the other bequests in the will. The provision that the payments of income to the testator's widow are to begin "three months after the date" of his death does not have that effect. It indicates a preference in the time of the payment of the income, but nothing more. 4 *Page on Wills, supra,* 319; 34 *A.L.R.* 1260.

Other instructions were sought by the bill but were not argued, and will not be considered.

A decree will be entered in accordance with this opinion.